STATE OF WEST VIRGINIA *v.* JOE PONCE

(No. 9233)

Submitted February 3, 1942. Decided March 10, 1942.

*W. F. Damron,* for plaintiff in error.

RILEY, JUDGE:

Upon a conviction of murder in the second degree, the Circuit Court of Logan County sentenced defendant Joe Ponce to confinement in the penitentiary from five to eighteen years. To that judgment, defendant prosecutes this writ of error.

Joe Ponce and Zigmond Stefanski had been good friends for many years. On April 7, 1941, Ponce and four others were engaged in playing a card game known as "rummy" in the village of Whitman, Logan County, West Virginia. The players employed a card-board box on which to deal

the cards, and Ponce was seated on a piece of lumber which had been placed on rocks. Stefanski, described as being twenty-seven years of age, six feet in height and weighing one hundred seventy-five pounds, came to the place where Ponce and his companions were playing. He had been drinking. He wrestled with several bystanders, one of whom (Herbert Hall) "took it to be playful." Stefanski then went to a position behind defendant and, as one witness stated, "started to playing with him and hitting him on the head and rubbing him on the head." Defendant testified that Stefanski pulled his hair and then "started pecking with the knuckle on top of my head." Defendant's statement that he asked Stefanski to quit is corroborated by the testimony of witnesses for the State; and when he did not, defendant, according to his testimony, started to get up "to go to the other side," when Stefanski "struck me by the side of the neck." The evidence is conflicting as to whether defendant was "hit" or "shoved"; but it is unequivocally established that defendant fell across the card-board box into a rock pile; that as he arose therefrom he had a rock in one hand and a brick in the other; and that he threw the rock at, and struck, Stefanski who was then from twelve to fifteen feet from defendant, causing his skull to be fractured and resulting in his death several hours later.

We shall consider first defendant's contentions that the jury verdict of second degree murder is not warranted under the evidence and that the court erred in giving State's instruction No. 2, the material portion of which instruction reads as follows:

> "The court instructs the jury that if you believe from the evidence in this case that the prisoner, Joe Ponce, committed the homicide charged in the indictment in this case under the heat of sudden passion, excited by some provocation which caused him to throw the rock that killed Zigmond Stefanski, yet which was insufficient to deprive the said Joe Ponce of the power of self-control, in that case he would be guilty of murder in the second degree; * * *."

An indispensable element of murder in the second degree is malice. *State* v. *Galford,* 87 W. Va. 358, 105 S. E. 237; *State* v. *Cassim,* 112 W. Va. 92, 163 S. E. 769. There has been judicial recognition that the term "malice" implies "a mind under the sway of reason." *State* v. *Galford, supra,* wherein this Court speaks of malice thus:

> "It excludes the idea of sudden passion aroused by an unanticipated and unprovoked battery inflicted by the assailant without the fault of the person assailed. If in such case the death of the aggressor results, even if intentional, it cannot be traced to a malignant heart but is imputable to human frailty. Passion and malice are not convertible terms, so that an act prompted by the one cannot be said to proceed from the other."

Clearly the instant case is one of sudden killing by one not primarily at fault. One witness testified that the accused threw the rock "just as quick as he grabbed it," while another, on cross-examination, estimated that the difficulty between the two men lasted only about five minutes. Certainly, no time intervened between the immediate provocation and the act which resulted in death "within which passion could have subsided and reason regained its dominion." *State* v. *Clifford,* 59 W. Va. 1, 52 S. E. 981. In *State* v. *Cassim, supra,* the Court said: "Where an affray is provoked by deceased, the use of a deadly weapon by defendant in killing deceased will not give rise to a presumption of malice." See also *State* v. *Galford, supra.* Hence, the use of the rock by defendant does not give rise to a presumption of malice. Without any evidence of malice, the verdict of the jury cannot be sustained. In *State* v. *Hurst,* 93 W. Va. 222, 116 S. E. 248, it was held that where the evidence of a jury is wholly without evidence on a point essential to a finding, the verdict should be set aside and a new trial awarded.

State's instruction No. 2 was the only one offered by the State which dealt with murder in the second degree in relation to the facts of the case. Malice as an element is omitted from the instruction, while by the language

thereof "the power of self-control" is submitted to the jury as the test for determining whether defendant is guilty of second degree murder. Obviously, "malice" and "power of self-control" are not synonymous. Hence, because we are of opinion that the evidence did not warrant an instruction on the theory of second degree murder, and further because the instruction fails correctly to state the elements upon which a verdict of murder in the second degree may be predicated, we disapprove the court's giving State's instruction No. 2.

Another error relied upon for reversal is the trial court's refusal to give defendant's instructions Nos. 1 and 4, which would have charged the jury on the theory of self-defense. These instructions are in accord with the principles enunciated in points 7 and 8 syllabus of *State* v. *Cain,* 20 W. Va. 679. See also *State* v. *McCallister,* 111 W. Va. 440, 162 S. E. 484. Hence, our inquiry is directed to the question of whether the trial court erred in refusing to give these instructions under the evidence adduced. Defendant testified that "at the time I looked back he (Stefanski) had his coat off and looked like he had something in his hand, but I didn't see what it was, but I thought he was coming after me * * *. When I got up I thought he was going to hit me with something, and he was pretty well drunk." Witnesses, including those who testified for the State, say that when the accused arose from the rock pile, decedent had already removed his coat, and the testimony of one witness was that Stefanski "was standing with his fists up, with his fists closed, looked to me like they was up in the air." The record does not disclose the physical disparity, if any, between accused and deceased; and while "the perspective of the living trial," accorded the jury, "is lost in the search for error in a dead record" (dissent of Mr. Justice Frankfurter in *Glasser* v. *United States,* ___ U. S. ___, 62 S. Ct. 457, 473, 86 L. ed. 680), it does appear that, in addition to the fact that deceased had been drinking at the time of the affray, he was twenty-seven years of age as compared with defendant's age of thirty-eight years. Although it may be argued that the

importance of these facts is minimized because of decedent's being twelve to fifteen feet from accused when the latter threw the rock, we are inclined to the view that the question of self-defense should have been submitted to the jury under the instructions offered; and since there was no instruction, other than Nos. 1 and 4, submitted by defendant on the issue of self-defense, it was prejudicial error for the court to have refused to give them.

The judgment of the trial court is reversed, the verdict set aside and the case remanded for a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*