STATE OF WEST VIRGINIA

*v.*

HENRY THOMAS MILAM

(No. 10787)

Submitted September 11, 1956.   Decided October 9, 1956.

*Kingdon & Kingdon, Frederick T. Kingdon,* for plaintiff in error.

*John G. Fox,* Attorney General, *George G. Burnette, Jr.,* Assistant Attorney General, for defendant in error.

LOVINS, JUDGE:

Henry Thomas Milam, hereinafter referred to as defendant, was indicted for the murder of his wife, Marie Milam. He entered a plea of not guilty, and upon trial,

was found guilty by a jury of the crime of voluntary manslaughter. After overruling a motion to set aside the verdict, the court sentenced him to serve an indeterminate sentence in the penitentiary from one to five years. The trial court, in view of defendant's showing of good reputation, recommended that the defendant be confined for the minimum time in the Huttonsville Medium Security Prison. This Court granted a writ of error to review that judgment.

The defendant married the deceased about seven years before the tragedy. The deceased had a daughter, Drema, at the time of her marriage to the defendant. The defendant and the deceased lived at Allen Junction, Wyoming County, West Virginia, and operated a restaurant next door to their home. Margaret Minnick, the sister of the deceased, lived with them. It seems that the deceased and her sister operated the business while the defendant was working in a mine where he was employed. When the defendant came home from work, he attended to the business establishment until it closed.

On or about May 6th, the deceased, her child and sister, left their home and stayed away until May 10th. During their absence, a man named Whitt joined them. The evidence tends to show that the two women, the child, Whitt and an unnamed man stayed in a cabin at Shawnee Lake in Mercer County.

Whitt, who seems to have been keeping company with the sister of the deceased, came to the home of the defendant and the deceased prior to the tragedy, where he obtained a pistol which he had theretofore given to Margaret Minnick, and was told by the defendant to give it to the sister of the deceased when she asked for it. Whitt also obtained some clothing belonging to Margaret Minnick.

Sometime during the day of May 10th, the deceased, her child, her sister and Whitt went to a justice of the peace to obtain a peace warrant for the defendant and

process to take the women's clothing, but the justice of the peace declined to issue the warrant and process on the grounds that the reasons shown therefor were not sufficient. The justice did, however, telephone to the defendant and ask if the deceased and her sister could obtain their clothing, and was given assurance that they could.

The reason for the separation of the defendant and deceased is not clearly shown in the record. There is evidence tending to show that the defendant and the deceased had, during their married life, quarreled, but nothing serious had resulted from such quarrels.

Upon their return to the residence of the defendant, he was in the restaurant, but upon request, he unlocked the door of the dwelling. The deceased, her child and sister, went into the house, but Whitt, who had driven them in his automobile, stayed outside.

For some reason not clearly shown, an affray started. During the affray, the deceased ran from the house screaming. The testimony as to who fired the first shot is in conflict. The child testified that the deceased, her mother, started running and screaming when the defendant shot Whitt; that the defendant was standing in the door of the house and shot her mother when she was just outside the gate; she then heard two shots at the same time, Margaret Minnick and the defendant shooting at each other. Whitt testified in substance, that the screaming started about three minutes after they entered the house; that the deceased ran through the gate of the fence that enclosed the house and was running along the fence at the time she was shot. Whitt also testified that the defendant was standing at the gate with the shotgun.

The defendant testified that he was fired upon first, obviously by Margaret Minnick who evidently had the pistol in her possession when she entered the dwelling. The defendant however stated he had given this pistol to Whitt and he did not know from what point the shot

came; in confusion, picked up his shot gun from near the front door and fired twice out the front door toward Whitt and at his wife; that the second shot, fired by Margaret Minnick, missed him and hit Marie Milam, apparently about the time he fired the second shot toward Whitt, thus hitting Marie Milam who was in his line of fire; that he then turned toward the back room and shot the sister.

The defendant's gunshot wound was evidently inflicted by the pistol which was afterwards found in the room where Margaret Minnick, the sister, was found dead.

As the deceased ran from the house, she was hit by a pistol bullet which, according to testimony of the state's witness, hit her in such way as to turn her right side toward the defendant who fired three shots from an automatic shot gun. The first shot hit Whitt in the face. The second shot entered the body of the deceased and the third shot evidently killed Margaret Minnick; so that the result of the shooting affray was that the defendant and Whitt were seriously wounded and the deceased and her sister killed.

The defendant defends on the grounds that he was so confused when the firing commenced that he thought he was in great danger of bodily harm at the hands of Whitt. It is pertinent to say that the deceased was running along the fence when she was struck by the shot gun load.

There is some conflict in the testimony whether the defendant shot from the doorway of his dwelling or from the yard near the gate. The testimony of the child, Drema, substantiates that of Milam with respect to where he was when the shooting occurred and conflicts with that of Whitt; and conflicts with that of Milam as to which of the shots fired by Margaret hit him. He says that Margaret shot him first and missed him with the second shot, hitting his wife. The testimony of the child indicates that her mother must have been struck by the first shot fired by Margaret and that Milam and Margaret shot each other with the last shots. The body of the sister was found in the bedroom and the pistol from

which two bullets were fired was found under some furniture in that room.

The defendant showed, by oral testimony, that he bore a good reputation as a law abiding person.

On the day of the trial, a jury was impaneled in the morning, but the doctor who examined the deceased was not present and the trial was postponed until that afternoon when the doctor appeared and gave his testimony. The trial then proceeded from 2:00 until 5:40 P.M. and from 6:30 to 8:15 P.M., when the case was submitted to the jury which returned a verdict at 9:28 P.M.

The defendant assigns as grounds in support of his motion to set aside the verdict, among others: The refusal of instructions 1, 3 and 4 (a), tendered by him and refused by the court and the modification of instruction 4 (a) which was given as modified. He also complains about the giving of state's instruction number 1, but makes no argument in his brief with respect to the court's action as to such instructions. It suffices to say that we have examined the instructions refused, modified and given and find no error in the action of the court with respect to such instructions.

The defendant assigns as errors: (1) The refusal of the trial court to sustain his motion, to declare a mistrial on the ground that the trial was delayed by failure of a state's witness to appear until the afternoon of the day of trial which resulted in a night session and hasty deliberation and verdict by the jury; (2) that the court erred in refusing to direct a verdict of not guilty at the conclusion of the state's evidence and likewise refusing to direct a verdict at the conclusion of all of the evidence. Defendant contends that the undisputed physical acts, together with other undisputed testimony showed, as a matter of law, that the defendant killed Marie Milam "accidentally, justifiably and excusably while engaged in efforts to defend himself from attack".

The motion to direct a mistrial is without merit. We

have examined the authority cited by the defendant, the case of *State* v. *Belknap*, 39 W. Va. 427, 19 S. E. 507. That case tersely and clearly lays down the rule applicable to such situations, in the fourth point of the syllabus, which reads:

> "The Circuit Court has a wide discretion in holding night sessions, so far limited, however, as that it shall not impair the party's right to a fair trial according to law."

The record does not show any abuse of discretion on the part of the trial court, nor is it shown that the defendant's right to a fair trial was impaired, or that any prejudice resulted to him on account of the holding of such night session. There is no merit in that assignment of error.

The assignment of error with respect to sufficiency of the evidence to sustain the verdict will now be discussed. Such or similar questions have been before this Court many times. Unless it is seen that the verdict is plainly wrong, the jury being the judge of the evidence, and where the evidence is conflicting, the appellate court will not disturb the verdict. *State* v. *Burner*, 94 W. Va. 634, 119 S. E. 878; *State* v. *Scurlock*, 99 W. Va. 629, 130 S. E. 263. It is the province of the jury to weigh the evidence upon the question of self-defense and an adverse verdict will not be set aside unless it is clearly against the evidence. *State* v. *McMillion*, 104 W. Va. 1, 138 S. E. 732. See *State* v. *Cain*, 20 W. Va. 679. In order to uphold the plea of self-defense, it must be shown that the accused had reasonable grounds to believe and did believe that he was threatened by the deceased with great bodily harm, and that such danger was actually imminent. *State* v. *Cain, supra; State* v. *Preece*, 116 W. Va. 176, 179 S. E. 524. In the case at bar, the deceased was running away from the scene of the affray screaming, and there was no showing that the deceased was armed or threatened to harm the defendant.

The question remains whether the defendant was confused or in fear of bodily harm. As hereinabove pointed

out, the evidence is conflicting on that subject. In the case of *State* v. *Bowles,* 117 W. Va. 217, 185 S. E. 205, the first point of the syllabus reads as follows:

"In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the accused beyond a reasonable doubt, though the evidence adduced by the accused is in conflict therewith. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

The foregoing quotation states the rule which has long been recognized in this jurisdiction. *State* v. *Reppert,* 132 W. Va. 675, 52 S. E. 2d 820; *State* v. *Spradley,* 140 W. Va. 314, 84 S. E. 2d 156. See *State* v. *Carduff,* 142 W. Va. 18, 93 S. E. 2d 502, where the principle is stated and cases cited in support of such.

Applying the foregoing principle relating to the effect of a jury verdict, we cannot say that the evidence in this case is manifestly inadequate and that consequent injustice has been done the defendant.

There is no doubt that the defendant killed the deceased, and as hereinabove stated, she was running away from the scene of the affray. The evidence is clear on that subject, but it is in conflict as to who fired the first shot and as to the position of the defendant when he fired the shot that killed the deceased. His testimony shows that he shot at her as above stated, and tends to contradict his testimony that he was confused. He was able to shoot Whitt in the face when Whitt was peeping around the side of his automobile.

It must be borne in mind that this prosecution is not grounded on the killing of Margaret Minnick, but Marie Milam, who did not, as far as the record shows, inflict personal injury on any person, or attempt to do so. The deceased may have been the inciting cause of the affray,

but that is not clearly shown. The injuries inflicted resulted from two pistol bullets which came from the room in which Margaret Minnick was killed and three shot gun loads from a gun in the hands of the defendant, one of which caused the death of Marie Milam.

Perceiving no error, the judgment of the Circuit Court of Wyoming County is affirmed.

*Affirmed.*