UNITED STATES of America, Appellee,

v.

**James Michael MARTIN, Appellant.**

No. 82–5159.

United States Court of Appeals, Fourth Circuit.

Argued May 11, 1984.

Decided Aug. 2, 1984.

**300**

H. Fred Kuhn, Jr., Beaufort, S.C. (Joel D. Bailey, Moss, Bailey & Dore, P.A., Beaufort, S.C., on brief), for appellant.

Karen Skrivseth, Dept. of Justice, Washington, D.C. (Henry Dargan McMaster, U.S. Atty., Columbia, S.C., on brief), for appellee.

Before WINTER, Chief Circuit Judge, CHAPMAN, Circuit Judge and BUTZNER, Senior Circuit Judge.

PER CURIAM:

Following a jury trial the appellant was convicted of conspiracy to import hashish, conspiracy to import hashish with intent to distribute, importation of hashish and possession of hashish with intent to distribute. He now claims that the trial court erred (a) in giving "an unbalanced Allen charge", (b) in admitting into evidence a boat registration card found in an automobile at the

proposed off-load site, (c) in failing to grant a mistrial when a drug enforcement agent testified that he had found a ski mask during a search of the T–Craft boat, which search was conducted during the trial, and (d) in failing to instruct the jury to disregard certain remarks of the assistant United States attorney that allegedly placed a burden upon the defendant to prove his innocence.

Finding no merit in any of these exceptions, we affirm.

### I

At about 2:30 a.m. on November 2, 1981 the sailing ship, Anonymous of Rorc, entered the North Edisto River in Charleston County after completing a crossing from Lebanon. It was loaded with 9600 pounds of hashish and had three crew members plus a captain. Shortly after entering the North Edisto River this ship was met by a white T–Craft fishing boat of about 20 feet in length. There was one individual in the fishing boat and he was wearing a ski mask. This individual boarded the sailing ship and took the helm, while the crew began loading the small boat with bales of hashish. At this time a customs patrol boat spotted the sailing ship and cut on its lights observing the Anonymous of Rorc and the T–Craft. The customs boat backed away a short distance, reported its find by radio and prepared to board. At this time the crew began throwing bales of hashish over the side and the individual wearing the ski mask jumped into the T–Craft and headed up the North Edisto River.

The Coast Guard boarded the sailing ship and arrested the captain and the three crew members. From a chart found aboard the ship it was determined that the off-load site was West Bank Plantation. Officers were sent to this site where they seized a 1973 Plymouth automobile. The temporary registration card for the Evinrude motor of the T–Craft was found in the vehicle. About daybreak the T–Craft was found grounded in Bohicket Creek. James Michael Martin was in the T–Craft and was arrested.

### II

Following three and a half days of trial the case went to the jury at 1:25 p.m. At 3:15 p.m. the jury asked to have certain testimony read by the court reporter and asked for an additional instruction as to constructive and actual possession. The charge was given and at 4:07 p.m. the jury came back requesting additional instructions and some additional testimony to be read. There was a delay in getting the court reporter to read the testimony, because two court reporters had been used in the trial due to a death in the family of one of the reporters.

At some time prior to 9:35 p.m. the jury had supper and at that time the court and the jury were waiting for the arrival of the first court reporter in order to read the requested testimony. While waiting, the judge inquired as to the quality of the meal and explained the cause of the delay. The court then stated:

> He'll be here in just a minute and after you hear that testimony that you want to hear, we'll let you deliberate a while longer and see what happens tonight. I am not going to lock you up in there and forget about you. But I want to tell you something about it. As I said, you haven't got to give up a firm conviction just to go with the crowd, however, if you've got a firm conviction about the case one way or the other, that doesn't mean you shouldn't listen to reason and think with the others and reason with the others and see if those of you who, as I said, if you are in the minority on the Jury, listen to the views of the majority; and if you are on the majority on the Jury, you listen to the views of the minority. And don't get yourselves in a position where you turn your back and say do what you want, I'm through. You listen and reason and I think you can arrive at a verdict after you hear his

testimony. There is nothing wrong with not agreeing. Occasionally we have a Jury who doesn't arrive at a verdict. You're not the first Jury.

The judge then stated that a case was tried best the first time and explained the problems of a second trial when each attorney has a copy of the first trial transcript and uses it for the purpose of correcting every little difference in the testimony of each witness between the first trial and the second trial.

There was an exception by the defendant as to that part of the charge "with regard to impeaching a witness' testimony and so forth" because defendant had used a prior statement in cross-examining some of the government witnesses. The court recalled the jury and gave an explanation of his prior comments as follows:

> I want to tell you one thing that I didn't want to create an improper inference from what I said about the use of the testimony to cross-examine the witnesses. Every good lawyer does that. If I made an incorrect inference, I did not mean to infer that it was improper in anyway to take a person's testimony that he relayed earlier under oath and cross-examine him with it at some later trial or hearing. If you don't do that, you're not worth a grain of salt. Every lawyer knows that. There is nothing wrong with that. I didn't mean to infer with that.

The additional charge certainly cleared up any misunderstanding that may have resulted from the court' earlier remarks about the use of prior testimony. Since there was no objection to the first part of the charge, the charge must have been plain error if the defendant is to prevail on this point.

■ The danger of the Allen type charge is the possibility that the minority on the jury may be coerced into going along with the majority. A decision so arrived at is not the unanimous verdict of each and every juror, but simply the decision of a majority of the twelve. *United States v. Rogers*, 289 F.2d 433 (4th Cir.1961).

■ The language of the supplemental charge is simply not coercive of any juror. It treats the majority and the minority equally and advises each to listen to the views of the other. Although it is not the charge approved in *United States v. Sawyers*, 423 F.2d 1335 (4th Cir.1970), it was not given to a deadlocked jury in an effort to get it to reach a verdict. The jury was still in deliberations, it was still waiting to hear the testimony read back by the court reporter, and although it had been out approximately eight hours, its notes to the court requesting additional testimony and additional charges indicated that it was continuing to deliberate the issues.

The jury reached a verdict at 11:40 p.m., some two hours after the above charge, so there is no evidence that the charge had the coercive effect that we criticized in the unbalanced charge in *Rogers, supra.*

■ Since there had been no indication that the jury was having difficulty in agreeing on a verdict, the charge was unnecessary, but since it was not coercive in any way, it was not error. The charge simply repeated what the judge had instructed in his initial charge:

> When you go to the jury room to deliberate and you start discussing the case, if you find yourself in the minority on the jury, listen to the views of the majority. If you find yourself in the majority, you listen to the views of the minority. You listen together, you reason together, you think together and listen and I'm sure you can arrive at a unanimous verdict.

### III

■ The defendant contends that the trial judge abused his discretion in admitting into evidence an owner's registration card for the T–Craft in which the appellant was

arrested. The appellant questions the authenticity of the document. Federal Rule of Evidence 901(a) states:

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

The question is really not one of authenticity, because the registration card speaks for itself and is obviously the registration card covering the T–Craft. The question is one of inconsistent testimony of whether the card had initially been given by the seller to the purchaser or whether it had been mailed. There was no abuse of discretion in the admission of the card.

### IV

■ Appellant contends that the court should have declared a mistrial after DEA agent Stein testified on cross-examination that a ski mask had been found on the T–Craft in a search that was conducted on the night between the first and second days of trial. The day before Stein testified, customs officer Jefferson, who arrested Martin on the T–Craft, twice answered defense counsel's question that no ski mask was found on this boat. The following morning when Stein testified, he did not mention on direct examination any items that were seized from the T–Craft. However, on cross-examination defense counsel asked Stein the unnecessary question as to whether a ski mask was found on Martin's boat. To his surprise the agent stated that a ski mask had been found on the T–Craft "late last night." Additional questions were asked on cross about the location of the ski mask and why it was not previously found. On redirect examination of this witness no questions were asked about the ski mask or its discovery. Following the luncheon recess appellant moved for a mistrial because of the statements made by agent Stein about the discovery of the ski mask. The court pointed out that this information came as a result of a question asked by defense counsel and that it was responsive to the question. However, the court instructed the jury to disregard all testimony about finding the ski mask. Before granting a mistrial, the court should always consider whether the giving of a curative instruction or some alternative less drastic than a mistrial is appropriate. *Harris v. Young*, 607 F.2d 1081, 1085 (4th Cir.1979), *cert. denied* 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980).

■ In the present case the information about the ski mask came out because of an unnecessary question. The defendant had already proved by the previous witness that a ski mask was not found on the T–Craft. The answer was responsive to the question, the curative instruction was sufficient and not objected to, and a mistrial was not required.

### V

■ There is no merit to the appellant's contention that the prosecutor's closing argument created a shift of the burden of proof to the defendant. Appellant's defense at trial was essentially that he was a commercial fisherman who recently purchased a new fishing boat with a partner, and that he was in the area in which he was arrested because he was crabbing rather than because he was involved in the offense. A defense witness testified that a commercial crabbing operation would need 50 to 100 crab pots while another testified that such an operation would need 20 to 3000 crab pots. The only evidence appellant produced that indicated he owned any crab pots was a defense witness who testified that appellant had purchased four or five crab pots from him. The comments of the prosecutor to the effect of "Where are the crab pots?" were in response not only to this evidence, but also to the closing argument of defense counsel which mentioned a crabbing operation.

AFFIRMED.

HARRISON L. WINTER, Chief Judge, dissenting:

While I agree with the majority that there is no other merit in the appeal, I think that the district court committed reversible error when it gave the jury a gratuitous, unbalanced *Allen* charge having a coercive effect. I would reverse on this point and require defendant to be tried anew. From the majority's contrary conclusion, I respectfully dissent.

It is the law of this circuit that the giving of a coercive charge is plain error. *United States v. Smith*, 353 F.2d 166 (4 Cir.1965).* It is not necessary for us in performing appellate review to examine the record to see if defendant objected to the charge or otherwise saved the issue for review. Rather, we may proceed directly to a consideration of whether the charge given was coercive.

I think that it was. While awaiting the arrival of a reporter to read back testimony requested by the jury, the district court told the jury:

> I tell you in trying a case, a case is always tried by both sides best the first time it's always tried. The lawyers do a better job. The witnesses do a better job. When I say a better job, it's more likely that you'll know the true facts of what happened .... you really never get as good a picture of a case as you do the first time it's tried.

Of course, in the overall expression, the jury was also told, in somewhat informal fashion, that jurors have a duty to consult with one another, that jurors, whether in the majority or in the minority, should listen to and consider the views of the opposing group and be willing to give up their own views if persuaded that they are erroneously held, and that jurors should "not give up a firm conviction just to go along with the crowd." In these aspects of the expression, the charge was balanced, but in my mind, this balance was destroyed by the quoted language about the significance of a first trial. When the jury was told that a case is *always* tried *best* the *first* time that it is tried, the lawyers and witnesses do a *better* job in a *first* trial, and it is more *likely* that the jurors will get the *true facts* in a *first* trial, I think the admonition not to give up a firm conviction was seriously undercut. The jurors were told, in effect, that, if the truth was ever to be known, they must agree on a verdict, whatever their individual convictions. A new and, to my mind, impermissible reason to reach a verdict was thus advanced, destroying the balance of the approved *Allen* charge. *See United States v. Rogers*, 289 F.2d 433 (4 Cir.1961); *United States v. Smith, supra; see also United States v. Sawyers*, 423 F.2d 1335 (4 Cir.1970). It is perhaps significant that after the jury heard the supplemental charge and the testimony that it wished to have repeated, it returned a verdict of guilty on each of four counts in thirty-five minutes.

---

* The rationale of treating a coercive charge as plain error was expressed in *Smith* as follows: when omissions of trial counsel can be made the basis of a claimed deprivation of constitutional rights in subsequent collateral proceedings, we think this court should note as plain error a charge which is so clearly coercive. 353 F.2d at 168. Of course, this Sixth Amendment concern was expressed with regard to a court-appointed lawyer, and counsel in the instant case was apparently privately retained. But since 1965, when *Smith* was decided, it has been recognized that the Sixth Amendment right to effective assistance of counsel applies equally to retained counsel. *See Cuyler v. Sullivan*, 446 U.S. 335, 344–45, 100 S.Ct. 1708, 1716–17, 64 L.Ed.2d 333 (1980).