454 S.E.2d 115

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Angela C. McCLANAHAN, Defendant Below, Appellant.**

**No. 22224.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 1994.

Decided Dec. 15, 1994.

Jacquelyn I. Custer, Asst. Atty. Gen., Charleston, for appellee.

Lonnie C. Simmons, DiTrapano & Jackson, Charleston, for appellant.

PER CURIAM:

The Circuit Court of Pendleton County sentenced the defendant in this proceeding, Angela C. McClanahan, to from one-to-five years in the State penitentiary for unlawfully wounding her husband by shooting him with a pistol. On appeal, the defendant claims that the undisputed evidence shows that she acted in self-defense and that, under the circumstances, the State's evidence was insufficient to support the verdict. She also contends that the trial court erred in instructing the jury on the effect of its being a hung jury. Lastly, she claims that the trial court erred in allowing the State to present a special interrogatory to the jury on the use of a firearm, when written notice of the State's decision to raise that question was faxed only the day before trial and was actually filed in the clerk's office on the day of trial.

After reviewing the questions presented and the documents filed, this Court finds that the defendant's first two assignments of error are without merit. The Court does find, however, that the notice of the State's intent to enhance the defendant's sentence for use of a firearm was not timely given. The jury's verdict of guilty is, therefore, affirmed, but the jury's finding that the crime was committed by the use of a firearm is set aside, and the defendant is remanded for sentencing as if she had not used a firearm in the commission of the crime charged.

The evidence adduced during the trial of this case shows that the defendant and her husband, Steven McClanahan, developed marital problems, and that after 1990 the defendant's husband, while drinking, spoke abusively to her, threatened to kill her, and actually did, on occasion, beat and strike her.

On October 9, 1992, an individual named Jessie Losh told the defendant's husband that the defendant had been involved with another man. Later that day, the defendant's husband became involved in an argument with the defendant and grabbed her by the shirt. He wanted her to accompany him to the location where she had allegedly been observed with her reputed lover. As the argument progressed, the defendant made a number of trips from the parties' house to her car to carry in groceries. At one point, when the defendant reentered the house and started to go upstairs, her husband began to accompany her. She then told her husband:

> Steve, I'm going to change clothes; I'm going to the bathroom; go outside and leave—just leave me alone.

At that point the defendant's husband went outside and positioned himself on the parties' porch.

While the defendant was upstairs in her bedroom, she armed herself with a .38 caliber handgun for which she had recently purchased ammunition. She then went downstairs and positioned herself in the doorway of the parties' house. According to her husband, as he prepared to reenter the house, the defendant said, "get away from me," and shot him. The bullet from the pistol penetrated a part of the defendant's husband's heart, a corner of his stomach, and his pancreas.

The defendant's husband was subsequently hospitalized for his injuries, and in the course of his hospitalization his spleen was removed. As a result of the events, the defendant was indicted for unlawful wounding.

During the defendant's trial, the defendant's husband, Steven McClanahan, who had apparently become reconciled with the defendant, testified that he had been abusive to the defendant, and he also testified that, after reflecting on the events that led up to the shooting, he believed that the defendant was justified in shooting him. He stated, "I don't think she wants any more beatings and stuff like that. I think she had a right to do it."

On cross-examination the defendant's husband admitted that he didn't rush through the door immediately before the shooting. Instead, he said, "I was coming normal...." When he said that he wanted the defendant to go "where they said you was seen," the defendant "throwed up and shot."

During trial, the defendant called as a witness, Thomas C. Stein, a licensed psychologist who had met with the defendant on three occasions. Dr. Stein testified that, in his opinion, the defendant demonstrated the characteristics of a person suffering from the battered wife syndrome.[1]

In the present appeal, the defendant claims that her evidence of self-defense was not rebutted by the State and that, under the law, the failure of the State to rebut her evidence beyond a reasonable doubt renders her conviction unsustainable.

In the early case of *State v. Cain*, 20 W.Va. 679 (1882), this Court discussed the circumstances under which self-defense could be established in a criminal case. In syllabus point 7, the Court summarized its conclusions as follows:

> When one without fault himself is attacked by another in such a manner or under such circumstances as to furnish reasonable grounds for apprehending a design to take away his life, or to do him some great bodily harm, and there is reasonable grounds for believing the danger imminent, that such design will be accomplished, and the person assaulted has reasonable ground to believe, and does believe, such danger is imminent, he may act upon such appearances and without retreating, kill his assailant, if he has reason-

---

1. Although the "battered spouse" defense was raised at trial and submitted to the jury, *see State v. Steele*, 178 W.Va. 330, 359 S.E.2d 558 (1987); *State v. Lambert*, 173 W.Va. 60, 312 S.E.2d 31 (1984), no error has been assigned in this regard. Consequently, we restrict our review to the self-defense issues raised by the appellant.

able grounds to believe, and does believe, that such killing is necessary in order to avoid the apparent danger; and the killing under such circumstances is excusable, although it may afterwards turn out, that the appearances were false, and that there was in fact neither design to do him some serious injury nor danger, that it would be done. But of all this the jury must judge from all the evidence and circumstances of the case.

This rule has consistently been accepted in many later West Virginia cases. *See, State v. Milam,* 142 W.Va. 98, 94 S.E.2d 442 (1956); *State v. Zannino,* 129 W.Va. 775, 41 S.E.2d 641 (1947); *State v. Ponce,* 124 W.Va. 126, 19 S.E.2d 221 (1942); *State v. McCallister,* 111 W.Va. 440, 162 S.E. 484 (1932); and *State v. Stockton,* 97 W.Va. 46, 124 S.E. 509 (1924). Further, in note 8 of *State v. Kirtley,* 162 W.Va. 249, 252 S.E.2d 374 (1978), this Court quoted with approval a pattern federal instruction which essentially incorporated the elements of the *Cain* definition of self-defense.[2]

The Court has further pointed out that an apprehension of harm, to support a claim of self-defense, must be an apprehension existing at the time of the defendant's attack on the victim. As stated in syllabus point 6 of *State v. McMillion,* 104 W.Va. 1, 138 S.E. 732 (1927):

> . . . No apprehension of danger previously entertained will justify the commission of the homicide; it must be an apprehension existing at the time the defendant fired the fatal shot.

■ In *State v. Kirtley, supra,* the Court discussed at some length the burden of proof where self-defense is raised. The Court said:

> Once there is sufficient evidence to create a reasonable doubt that the killing resulted from the defendant acting in self-defense, the prosecution must prove be-

yond a reasonable doubt that the defendant did not act in self-defense.

Syl. pt. 4, *State v. Kirtley, supra.*

The defendant has apparently construed the *Kirtley* rule as holding that where a defendant has reasonably raised the issue of self-defense, the State has an affirmative burden of advancing rebuttal evidence to rebut the defendant's evidence, and she is apparently taking the position that because the State did not adduce rebuttal evidence, her conviction cannot stand.

Legally there is a distinction between proof and evidence, and, for this reason, the Court disagrees with the defendant's claim that the State is under a burden to adduce rebuttal evidence. As is stated in 1 F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 1-2(B) (1994):

> Proof is all of the evidence before the trier of fact relevant to a fact in issue which tends to establish the existence or nonexistence of such fact. While *evidence* is defined as information received, proof is the persuasion produced by a consideration of the evidence, i.e., the effect of evidence.

■ The real thrust of the holding in *State v. Kirtley, supra,* is that the overall evidence adduced, when viewed in the light most favorable to the State, must be sufficient to persuade a jury beyond a reasonable doubt that the defendant did not act in self-defense. *See, State v. W.J.B.,* 166 W.Va. 602, 276 S.E.2d 550 (1981). The State's burden is one of proof and not one of the introduction of formal rebuttal evidence.

■ In this Court's view, the State in the present case presented evidence suggesting that the defendant did not act under an apprehension of danger existing at the time she shot her husband, but rather as the result of some pre-existing resentment over his prior behavior. This evidence, if believed by the jury, could, in this Court's view, reasonably have persuaded the jury that the defendant did not act in self-defense. In

---

**2.** The Court notes that as a result of this Court's ruling in *State v. W.J.B.,* 166 W.Va. 602, 276 S.E.2d 550 (1981), the test, under appropriate circumstances, is slightly different where a defendant is defending his home against an unlawful intruder.

The principles of *W.J.B.* do not apply in the present case since the victim, the defendant's husband, was not an intruder in the parties' home.

essence, the State did advance evidence which, if persuasive, could have proven, and apparently did prove to the jury beyond a reasonable doubt, that the defendant did not act in self-defense.

In view of all this, the Court is of the view that the defendant's first assignment of error is without merit.

On appeal, the defendant also claims that the trial court erred in instructing the jury, prior to trial, that a hung jury was a very rare thing and that a hung jury would require the parties to retry the case again to another jury panel.

Prior to the jury being selected in the present case, while the trial court was indoctrinating the jury panel which was to consider a juvenile case and the present case, the trial court instructed the panel on the potential effect of its failure to reach a verdict. The Court stated:

> ... You need to keep in mind that particularly in this Circuit—that there is such a thing as a hung jury, but in this particular Circuit, a hung jury is a very rare thing, and a hung jury is basically a jury that cannot make up their minds; cannot make a decision, because a decision in these cases need to be unanimous—that means all twelve jurors on the panel will need to vote one way or the other in regard to this matter. It has to be a unanimous decision.
>
> Nonetheless, a hung jury sometimes happens, but they are a rarity in this Circuit. You need to keep in mind that in regard to a hung jury, that each of you, and you as jurors in these particular cases, are just as capable, just as qualified to answer the question that is posed than any other jury. And what happens when you have a hung jury, is that you would be discharged from further service after we went through the whole trial of the case and heard all the evidence, saw all the exhibits, considered all of that, deliberated in your jury room, and if you report back that you are a hung jury, and you cannot make a decision, what happens then, you would be discharged; we would need to call in another panel, go through this same process again; select a jury again; present the evidence again; have them deliberate,

and make a decision that you say that you cannot make yourself. So you can see that you're just—just as qualified as the next jury would be to try and make a decision in these various cases. . . .

On appeal, the defendant claims that this instruction to the jury panel prejudiced the decision in her case and was unfairly coercive.

An instruction similar to the one of which the defendant complains is often called a "dynamite" or "Allen" instruction, and an instruction similar to it was approved by the Supreme Court of the United States in *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). As indicated in 2 F. Cleckley, *Handbook on West Virginia Criminal Procedure* II–257 (1993):

> The central idea of the instruction is that although no juror is expected to yield a conscientiously held opinion, the jury has a duty to decide the case if it can conscientiously do so; and if a majority of the jury is either for conviction or acquittal, the minority ought to consider whether a contrary view may be reasonable and correct.

Recently, this type of instruction has been challenged on the ground that it can create the danger that the minority of a jury may be coerced into going along with the majority. Under such circumstances, the verdict of the jury is not the unanimous verdict of each and every juror, but simply the decision of a majority of twelve. *See, United States v. Martin,* 740 F.2d 299 (4th Cir.1984).

In *State v. Hobbs,* 168 W.Va. 13, 282 S.E.2d 258 (1981), this Court recognized that the key question where an "Allen" type instruction is given is whether the trial court's instruction constituted improper coercion of the verdict. The Court further stated:

> Whether a trial court's instructions constitute improper coercion of a verdict necessarily depends upon the facts and circumstances of the particular case and cannot be determined by any general or definite rule.

168 W.Va. at 37, 282 S.E.2d at 272.

The Court reached the same conclusion in *State v. Spence,* 173 W.Va. 184, 313 S.E.2d 461 (1984), and stated in syllabus point 2:

"Whether a trial court's instructions constitute improper coercion of a verdict necessarily depends upon the facts and circumstances of the particular case and cannot be determine by any general or definite rule. *Janssen v. Carolina Lumber Co.*, 137 W.Va. 561, 73 S.E.2d 12 (1952)." *State v. Hobbs*, 168 W.Va. 13, 282 S.E.2d 258, 272 (1981).

The Court is unaware of any case which discusses the precise issue involved in the present case, that is, whether the giving of an "Allen" type instruction to the jury panel prior to trial constitutes reversible error. In *State v. Christopher*, 94 N.M. 648, 615 P.2d 263 (1980), the New Mexico court was asked whether the distribution of a jury handbook to the jury panel prior to trial constituted reversible error. The handbook stated:

If a jury cannot arrive at a verdict within a reasonable time and the judge is so advised, he can, in his discretion, order the jury dismissed with the result that another trial of the case usually follows with consequent added expense to all parties. It is, therefore, highly advisable that a verdict be rendered if that can be done with the sincere and honest judgment of the required number of jurors.

The New Mexico Supreme Court concluded that, in the absence of a showing of prejudice by the defendant, the distribution of the handbook did not constitute reversible error.

■ In this Court's view, in line with the thinking of the New Mexico court in the *Christopher* case, the trial court's giving of the challenged instruction should be a ground for reversing the jury's verdict only if the defendant can show prejudice. The Court further believes that prejudice would be shown if the defendant could show that the instruction coerced a verdict from the jury.

■ In the present case, it appears that the trial court's hung-jury instruction was given during pretrial indoctrination of the jury panel. It was thus distant in time from the jury's deliberations. Further, there is no evidence that the jury became deadlocked. After return of the verdict the jurors were polled, and nothing in their responses suggested any hesitation about the verdict or that coercion in any way affected it.

Under the circumstances, this Court cannot conclude that the defendant has shown that the jury's pretrial orientation was prejudicial to her.

On appeal, the defendant lastly claims that the trial court erred in allowing the State to present the special interrogatory on the use of a firearm, when written notice of the submission of the special interrogatory was not faxed until the day before trial and was not filed in the clerk's office until the first day of trial.

After evidence had been presented in this case, the trial court allowed the State to submit a special interrogatory to the jury asking the jury if it found that the defendant had committed the crime charged by use of a firearm. The State did this to form a basis for enhancing the defendant's sentence under provisions of W.Va.Code, 62–12–2(b), which, in essence, provides that a defendant who commits a felony by use of a firearm shall be ineligible for probation.[3]

At the conclusion of the trial, the jury found that the crime charged had been committed by use of a firearm. The trial court subsequently sentenced the defendant to from one to five years in the state penitentiary.

■ In *State v. Johnson*, 187 W.Va. 360, 419 S.E.2d 300 (1992), this Court clearly recognized that the Legislature in enacting W.Va.Code, 62–12–2, intended to prohibit the granting of probation to one who was found

**3.** West Virginia Code, 62–12–2(b), actually provides:

"The provisions of subsection (a) of this section to the contrary notwithstanding, any person who commits or attempts to commit a felony with the use, presentment or brandishing of a firearm shall be ineligible for probation. Nothing in this section shall apply to an accessory before the fact or a principal in the second degree who has been convicted as if he or she were a principal in the first degree if, in the commission of or in the attempted commission of the felony, only the principal in the first degree used, presented or brandished a firearm.

to have committed a felony by use of a firearm, and, in syllabus point 1, the Court stated:

W.Va.Code, 62–12–2 (1986), prohibits a grant of probation to any person convicted of committing a felony with the use, presentment, or brandishing of a firearm.

The Court, however, also recognized that before probation could be denied for use of a firearm, the defendant had to be given notice of the State's intention to seek an enhanced penalty. The Court indicated in syllabus point 2 of the *Johnson* case that the notice could be given in two ways:

Under W.Va.Code, 62–12–2 (1986), the State has two options by which it may notify the defendant of its intent to seek an enhanced penalty. Under W.Va.Code, 62–12–2(c)(1), it may set out the charge in the indictment, or, under W.Va.Code, 62–12–2(c)(2)(C), it may elect to give notice of the enhancement by a writing. In this latter event, the grounds must be set out as fully as such grounds are otherwise required to be stated in an indictment.

The Court in the body of the *Johnson* case also recognized that:

In order for it to be meaningful, the notice must be received at a time when the defendant can still choose between alternative courses of action, such as plea bargaining or proceeding to trial. *See, e.g., State v. Waggoner,* 144 Ariz. 237, 697 P.2d 320 (1985); *State v. Frazier,* 81 Wash.2d 628, 503 P.2d 1073 (1972); *State v. Rodgers,* 134 Ariz. 296, 655 P.2d 1348 (App.1982).

*State v. Johnson, Id.* 187 W.Va. at 362, 419 S.E.2d at 302.

■ The documents filed in the present case suggest that notice of the State's intention to seek an enhanced sentence pursuant to W.Va.Code, 62–12–2, based upon the defendant's use of a firearm was sent to defense counsel via facsimile transmission on September 29, the day before trial. It was filed with the clerk of the Court on the morning of trial.[4]

■ As indicated in *State v. Johnson, Id.,* the purpose of requiring the State to file a notice of the decision to seek enhancement of

a sentence for the use of a firearm is to insure that a defendant shall have a reasonable time to choose between alternative causes of action, such as plea bargaining or proceeding to trial.

The choosing between alternatives, *per force,* requires consideration of a number of factors, such as the details of a proposed plea bargain agreement and the consideration of the probable outcome of the trial. In the final hours prior to trial, a trial attorney is preoccupied with the details of the coming trial and, in this Court's opinion, does not have the time both to prepare for trial and to engage in a meaningful examination of such matters as the details of a proposed plea agreement.

In the present case, it does not appear that defense counsel was aware of the State's notice until less than a day prior to the commencement of trial, and, in this Court's opinion, the overall circumstances suggest that defense counsel did not have an adequate opportunity to evaluate an alternative cause of action.

Under the circumstances, the Court cannot conclude that the defendant received an appropriate notice of the State's intent to enhance, and the enhancement of the defendant's sentence must be reversed.

For the reasons stated, the jury's verdict of guilt is affirmed, but the defendant's sentence, which is based on the jury's finding that the defendant committed the crime charged with a firearm, is set aside, and the defendant is remanded with directions that she be sentenced without consideration of the fact that she used a firearm in the commission of the crime.

Affirmed in part, reversed in part, and remanded with directions.

BROTHERTON, C.J., did not participate.

MILLER, Retired J., sitting by temporary assignment.

---

4. Although the indictment charged that the defendant had shot the victim, it did not specifically allege the use of a firearm and did not, in this Court's opinion, suggest that the State intended to seek an enhancement of the defendant's sentence.