559 S.E.2d 713

**Antonio FELICIANO, Plaintiff,**

v.

**7–ELEVEN, INC., a Corporation, Defendant.**

No. 29564.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 2, 2001.

Decided Nov. 30, 2001.

Dissenting Opinion of Justice Maynard Dec. 11, 2001.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The plaintiff, Antonio Feliciano [hereinafter referred to as "Feliciano"], was employed as a retail sales clerk by the defendant, 7–Eleven, Inc. [hereinafter referred to as "7–Eleven"], at its Baker Heights store, located in Berkeley County, West Virginia. At approximately 4:00 a.m. on July 14, 2000, a woman, wearing a mask and pointing a firearm, demanded that store employees, including Feliciano, give her the store's money. During this incident, certain employees emptied the cash register and, while the woman was focused upon another employee, Feliciano grabbed and disarmed her. Feliciano continued to restrain the would-be robber until local law enforcement authorities arrived on the scene and apprehended her.[1]

Paul G. Taylor, Martinsburg, for the Plaintiff.

Charles F. Printz, Jr., Brian M. Peterson, Bowles Rice McDavid Graff & Love, PLLC, Martinsburg, for the Defendant.

DAVIS, Justice:

The United States District Court for the Northern District of West Virginia presents, for resolution by this Court, the following certified question: "Whether the right of self-defense is a 'substantial public policy' exception to the at-will employment doctrine, which provides the basis for a wrongful discharge action?" Following a review of the parties' arguments, the record presented for our consideration, and the pertinent authorities, we answer the certified question in the affirmative. In this regard, we find that the State of West Virginia recognizes a substantial public policy exception to the at will employment doctrine whereby an employee may defend him/herself against lethal imminent danger. However, an employer may rebut the presumption of a wrongful discharge based upon an employee's exercise of his/her right to self-defense by demonstrating that it based the termination upon a plausible and legitimate business reason.

Following this incident, 7–Eleven terminated Feliciano, who was an at will employee, for failure to comply with its company policy which prohibits employees from subduing or otherwise interfering with a store robbery. Feliciano then filed a civil action against 7–Eleven in the Circuit Court of Berkeley County alleging that he had been wrongfully discharged, in contravention of West Virginia public policy, for exercising his right to self-defense. The defendant removed the suit to the United States District Court for the Northern District of West Virginia, Martinsburg Division, based upon diversity of citizenship[2] and moved to dismiss Feliciano's claim, contending that he had failed to state a claim upon which relief could be granted.[3] In considering this motion, the district court encountered a legal conundrum which it has certified to this Court.[4] Applying West Virginia substantive law, the court ruled, by order entered February 28, 2001, that, "un-

---

1. The parties represent that the woman subsequently pled guilty to possession of a firearm during the commission of a crime of violence.

2. *See generally* 28 U.S.C. § 1441, *et seq.*

3. *See* Fed.R.Civ.P. 12(b)(6).

4. W. Va.Code § 51–1A–3 (1996) (Repl.Vol.2000) governs certified questions from federal courts:

The supreme court of appeals of West Virginia may answer a question of law certified to it by any court of the United States ... if the answer may be determinative of an issue in a pending cause in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state. For the complete text of the certified question at issue in the present case, see *infra* Section III.

less the West Virginia Supreme Court of Appeals holds otherwise, the Court concludes that self-defense is not a substantial public policy in West Virginia," which ruling, if upheld, would result in the dismissal of Feliciano's complaint for failure to state a meritorious claim for wrongful discharge. Pursuant to this decision, the district court certifies its question of law to this Court.

## II.

## STANDARD OF REVIEW

■ When considering a certified question, we generally accord the original court's determination thereof plenary review. " 'A de novo standard is applied by this [C]ourt in addressing the legal issues presented by a certified question from a federal district or appellate court.' Syl. Pt. 1, *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998)." Syl. pt. 2, *Aikens v. Debow*, 208 W.Va. 486, 541 S.E.2d 576 (2000). *Accord* Syl. pt. 1, *Bower v. Westinghouse Elec. Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999) ("This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court."). In the case presently before us, the specific question at issue for our determination has been established to be a question of law: "A determination of the existence of public policy in West Virginia is a question of law, rather than a question of fact for a jury." Syl. pt. 1, *Cordle v. General Hugh Mercer Corp.*, 174 W.Va. 321, 325 S.E.2d 111 (1984). During our consideration of questions of law, be they presented by certification or otherwise, we employ a *de novo* standard of review. "To the extent that we are asked to interpret a statute or address a question of law, our review is *de novo.*" *State v. Paynter*, 206 W.Va. 521, 526, 526 S.E.2d 43, 48 (1999). *Accord* Syl. pt. 2, *Coordinating Council for Indep. Living, Inc. v. Palmer*, 209 W.Va. 274, 546 S.E.2d 454 (2001) (" 'Where the issue on an appeal from the circuit court is clearly a

question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)."). Having established the appropriate standard of review for the case *sub judice*, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

The single issue presented for resolution by this Court is the certified question posed by the United States District Court for the Northern District of West Virginia: "Whether the right of self-defense is a 'substantial public policy' exception to the at-will employment doctrine, which provides the basis for a wrongful discharge action?" In rendering its decision, the district court opined that the right of self-defense did not constitute a "substantial public policy" exception to the at will employment doctrine, and thus Feliciano had failed to state a valid claim for wrongful discharge. On certification to this Court, Feliciano maintains that such a substantial public policy does exist, while 7–Eleven agrees with the district court's ruling effectively precluding the assertion of Feliciano's claim for wrongful discharge.

■ Before definitively deciding the question certified for our determination, it is helpful to briefly review basic concepts of employment law applicable to the case *sub judice*. In the State of West Virginia, employers and employees alike are generally governed by the at will employment doctrine.[5] Pursuant to this body of law, "[w]hen a contract of employment is of indefinite duration it may be terminated at any time by either party to the contract." Syl. pt. 2, *Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 90 S.E.2d 459 (1955). The practical effect of this doctrine, then, is

---

5. It goes without saying, however, that where an employment contract specifically addresses the term or duration of employment, the employment most likely is not at will. *Cf.* Syl. pt. 3, *Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 90 S.E.2d 459 (1955) (" 'An employment upon a monthly or annual salary, if no definite period is otherwise stated or proved for its continuance, is presumed to be a hiring at will, which either party may at any time determine at his pleasure without liability for breach of contract.' Point 1, syllabus, *Resener v. Watts, Ritter and Company*, 73 W.Va. 342[, 80 S.E. 839 (1913) ].").

that "an at-will employee serves at the will and pleasure of his or her employer and can be discharged at any time, with or without cause." *Kanagy v. Fiesta Salons, Inc.*, 208 W.Va. 526, 529, 541 S.E.2d 616, 619 (2000) (citation omitted). Nevertheless, " 'the employer is not so absolute a sovereign of the job that there are not limits to his prerogative.' " *Id.*, 208 W.Va. at 533, 541 S.E.2d at 623 (quoting *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 178, 164 Cal.Rptr. 839, 845, 610 P.2d 1330, 1336 (1980)).

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy princip[le], then the employer may be liable to the employee for damages occasioned by this discharge.

Syl., *Harless v. First Nat'l Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978). This exception to the at will employment doctrine recognizes that, in spite of the right of employers to terminate their employees, " '[o]ne of the fundamental rights of an employee is the right not to be the victim of a "retaliatory discharge," that is, a discharge from employment where the employer's motivation for the discharge is in contravention of a substantial public policy[.]' " *Kanagy*, 208 W.Va. at 530, 541 S.E.2d at 620 (quoting *McClung v. Marion County Comm'n*, 178 W.Va. 444, 450, 360 S.E.2d 221, 227 (1987) (quotation and citation omitted)).

Accordingly, a cause of action for wrongful discharge exists when an aggrieved employee can demonstrate that his/her employer acted contrary to substantial public policy in effectuating the termination. " ' "[P]ublic policy" is that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public or against public good even though no actual injury may have resulted therefrom in a particular case to the public.' " *Cordle v. General Hugh Mercer Corp.*, 174 W.Va. at 325, 325 S.E.2d at 114 (quoting *Allen v. Commercial Cas. Ins. Co.*, 131 N.J.L. 475, 477–78, 37 A.2d 37, 39 (1944) (internal quotations and citations omitted)). Whether a particular factor motivating a discharge from employment is a matter of public policy is dictated by reference to various authorities: "[t]o identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, we look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Syl. pt. 2, *Birthisel v. Tri–Cities Health Servs. Corp.*, 188 W.Va. 371, 424 S.E.2d 606 (1992). *E.g.*, Syl. pt. 3, *Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 506 S.E.2d 578 (1998) (discussing procedure for basing substantial public policy on constitutional provision). However, in order to sustain a cause of action for wrongful discharge, the public policy relied upon must not just exist; it must be substantial. "Inherent in the term 'substantial public policy' is the concept that the policy will provide specific guidance to a reasonable person." Syl. pt. 3, *Birthisel*, 188 W.Va. 371, 424 S.E.2d 606. Moreover,

> [t]he term "substantial public policy" implies that the policy principle will be clearly recognized simply because it is substantial. An employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations.

*Id.*, 188 W.Va. at 377, 424 S.E.2d at 612. Thus, to be substantial, a public policy must not just be recognizable as such but must be so widely regarded as to be evident to employers and employees alike.

Turning now to the issue presently before us, we must decide whether self-defense is a substantial public policy exception so as to support a cause of action for wrongful discharge. In our prior decision of *Birthisel*, we observed that the sources of public policy include constitutional authority, statutory and regulatory provisions, and principles of common law. Syl. pt. 2, *Birthisel*, 188 W.Va. 371, 424 S.E.2d 606. An examination of the West Virginia Constitution and the legislation of this State, however, suggest that while both bodies of law briefly mention an individual's right to defend him/herself, neither clearly expresses this view as a definite statement of public policy. *See, e.g.*, W. Va. Const. art. III, § 22 (securing an individual's

"right to keep and bear arms for the defense of self"); W. Va.Code § 61–7–1 (1989) (Repl. Vol.2000) (acknowledging the right to bear arms for self-defense). *See also* W. Va.Code § 61–6–21(e) (1987) (Repl.Vol.2000) (permitting the teaching of self-defense techniques in civil rights context).

▬▬▬ The jurisprudential history of this State, however, clearly demonstrates the existence of a public policy favoring an individual's right to defend him/herself. From the earliest reported cases to present day decisions, this Court has repeatedly recognized and safeguarded an individual's right to defend him/herself against an unprovoked assailant. In the course of these opinions, we have defined the nature of the right to self-defense, holding that

[w]hen one without fault himself is attacked by another in such a manner or under such circumstances as to furnish reasonable grounds for apprehending a design to take away his life, or to do him some great bodily harm, and there is reasonable grounds for believing the danger imminent, that such design will be accomplished, and the person assaulted has reasonable ground to believe, and does believe, such danger is imminent, he may act upon such appearances and without retreating, kill his assailant, if he has reasonable grounds to believe, and does believe,

that such killing is necessary in order to avoid the apparent danger; and the killing under such circumstances is excusable, although it may afterwards turn out, that the appearances were false, and that there was in fact neither design to do him some serious injury nor danger, that it would be done. But of all this the jury must judge from all the evidence and circumstances of the case.

Syl. pt. 7, *State v. Cain*, 20 W.Va. 679 (1882). More recently, we have similarly observed that

[s]elf-defense is generally defined as follows:

[A] defendant who is not the aggressor and has reasonable grounds to believe, and actually does believe, that he is in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against his assailant has the right to employ deadly force in order to defend himself.

*State v. Hughes*, 197 W.Va. 518, 524, 476 S.E.2d 189, 195 (1996) (quoting *State v. W.J.B.*, 166 W.Va. 602, 606, 276 S.E.2d 550, 553 (1981) (citations omitted)).[6] In the course of rendering these rulings, we have also clarified the essential elements of this offense.[7]

**6.** Accord *State v. Miller*, 178 W.Va. 618, 622, 363 S.E.2d 504, 508 (1987) ("[T]he concept of self-defense ... provides a justification or excuse for a killing, and is a complete defense to criminal liability." (citations omitted)); *State v. W.J.B.*, 166 W.Va. 602, 608, 276 S.E.2d 550, 554 (1981) ("[A] person has the right to repel force by force in the defense of his person, his family or his habitation, and if in so doing he uses only so much force as the necessity, or apparent necessity, of the case requires, he is not guilty of any offense, though he kill his adversary in so doing." (internal quotations and citations omitted)); Syl. pt. 4, *State v. Foley*, 128 W.Va. 166, 35 S.E.2d 854 (1945) ("Where, in a trial for murder, there is competent evidence tending to show that the accused believed, and had reasonable grounds to believe, that he was in danger of losing his life or suffering great bodily harm at the hands of several assailants acting together, he may defend against any or all of said assailants, and it is reversible error for the trial court to refuse to instruct the jury to that effect."); Syl. pt. 6, *State v. Cain*, 20 W.Va. 679 (1882) ("Where there is a quarrel between two persons, and both are in

fault, and a combat as the result of such quarrel takes place, and death ensues, in order to reduce the offense to killing in self defense, two things must appear from the evidence and the circumstances of the case, first that before the mortal blow was given, the prisoner declined further combat and retreated, as far as he could with safety; and secondly, that he necessarily killed the deceased in order to preserve his own life, or to protect himself from great bodily harm.").

**7.** *See, e.g., State v. Plumley*, 184 W.Va. 536, 540, 401 S.E.2d 469, 473 (1990) (per curiam) ("In addressing the standard by which the reasonableness of an individual's beliefs and actions in self-defense must be judged, we have recognized that the reasonableness of such beliefs and actions must be viewed 'in [the] light of the circumstances in which he acted at the time and not measured by subsequently developed facts.'") (quoting *State v. Reppert*, 132 W.Va. 675, 691, 52 S.E.2d 820, 830 (1949) (citations omitted)); Syl. pt. 1, *State v. Baker*, 177 W.Va. 769, 356 S.E.2d 862 (1987) ("The amount of force that can be used in self-defense is that normally one can

Similarly, we have refined the circumstances under which a defendant may avail him/herself of a self-defense argument [8]

return deadly force only if he reasonably believes that the assailant is about to inflict death or serious bodily harm; otherwise, where he is threatened only with non-deadly force, he may use only non-deadly force in return."); Syl. pt. 3, *State v. Preece*, 116 W.Va. 176, 179 S.E. 524 (1935) ("Self-defense as a justification for homicide is not necessarily based upon actual necessity; if the circumstances were such as to cause a reasonably prudent person to believe, and if the accused did believe, that the killing was necessary then, the other elements thereof being present, the defense is valid."); Syl. pt. 1, in part, *State v. Miller*, 85 W.Va. 326, 102 S.E. 303 (1919) ("One assaulted by another is not bound to retreat, but if he is the aggressor, or unnecessarily pursues his assailant after the latter has declined the combat and inflicts upon him bodily injury, he is guilty of assault and battery."); *State v. Hamrick*, 74 W.Va. 145, 149, 81 S.E. 703, 705 (1914) ("Our decisions say that in order to justify the killing the accused must have had reasonable grounds to believe, and did believe the danger was imminent, and that the killing was necessary to preserve his own life, or to protect him from great bodily harm, before he is excusable for using a deadly weapon in his defense." (citations omitted)); Syl. pt. 8, *Shires v. Boggess*, 72 W.Va. 109, 77 S.E. 542 (1913) ("One in his own house need not stand and take without resisting with force even slight assaults of an intruder or trespasser, and until he believes or has reason to believe that he is about to sustain some *great* bodily harm. But he must not use force disproportioned to that used against him, and may not use a deadly weapon unless his own life is imperiled or it is necessary to ward off great bodily harm."); Syl. pt. 4, *State v. Hood*, 63 W.Va. 182, 59 S.E. 971 (1907) ("In case of affray, where retreat is necessary before taking the adversary's life in self defence, that retreat must be in good faith, not as a cover to execute a fixed design to kill."); Syl. pt. 8, *State v. Cain*, 20 W.Va. 679 ("In such a case as to the imminency of the danger, which threatened the prisoner, and the necessity of the killing in the first instance the prisoner is the judge; but he acts at his peril, as the jury must pass upon his action in the premises, viewing said actions from the prisoner's stand-point at the time of the killing; and if the jury believe from all the facts and circumstances in the case, that the prisoner had reasonable grounds to believe, and did believe, the danger imminent, and that the killing was necessary to preserve his own life or to protect him from great bodily harm, he is excusable for using a deadly weapon in his defense, otherwise he is not."); Syl. pt. 10, *State v. Abbott*, 8 W.Va. 741 (1875) ("To excuse the slayer, he must act under an honest belief that it is necessary, at the time, to take the life of his adversary in order to save his own; and it must appear that there was reasonable cause to excite this apprehension.").

8. *See, e.g.,* Syl. pt. 2, *State v. Wade*, 200 W.Va. 637, 490 S.E.2d 724 (1997) ("Self-defense and provocation instructions are not available in response to a charge of felony-murder where the predicate felony is the delivery of a controlled substance."); Syl. pt. 2, *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978) ("Where a defendant is the victim of an unprovoked assault and in a sudden heat of passion uses a deadly weapon and kills the aggressor, he cannot be found guilty of murder where there is no proof of malice except the use of a deadly weapon."); *State v. Cowan*, 156 W.Va. 827, 832, 197 S.E.2d 641, 644 (1973) ("While it is not inconceivable in a given factual situation that there could be a proper defense of self-defense to a prosecution for armed robbery, such a possibility strains the imagination."); Syl. pt. 7, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966) ("Where a defendant relies on self-defense and stated that she believed she was in danger of great bodily harm and was attempting to protect herself from apparent danger and fires a shotgun charge through a window and no one is attempting to enter her home at the time, she assumes the risk in so doing."); Syl. pt. 4, *State v. Preece*, 116 W.Va. 176, 179 S.E. 524 ("A man attached in his own home by an intruder may invoke the law of self-defense without retreating."); Syl. pt. 4, *State v. Donahue*, 79 W.Va. 260, 90 S.E. 834 (1916) ("One without fault, assaulted by another in a public road, where he has the right to be, is not bound to retreat, but may lawfully stand upon his rights and repel the assault and if necessary to protect his own life or save himself from great bodily harm, may even take the life of his assailant."); Syl. pt. 17, in part, *State v. Clark*, 64 W.Va. 625, 63 S.E. 402 (1908) ("In exercising one's right to resist an illegal arrest he has no right, in order to retain or regain his liberty, to take the life of the officer, unless he has reason to believe and does believe he is in imminent danger, and that it is necessary to do so in order to save his own life, or to save himself from some great bodily harm[.]"); Syl. pt. 10, *State v. Prater*, 52 W.Va. 132, 43 S.E. 230 (1903) ("The principle of self defense extends to the right of a person to defend a near relative when in immediate danger of death or great bodily harm, and will excuse homicide in such case, when the killing is upon necessity or apparent necessity and the designation of it as self defense in instructions which clearly explain the applicability of it to the case on trial, does not render the instruction improper."); Syl. pt. 15, *State v. Greer*, 22 W.Va. 800 (1883) ("The right of self-defence may be exercised in behalf of a brother or a stranger."). *But see, e.g.,* Syl., *State v. Curry*, 112 W.Va. 549, 165 S.E. 810 (1932) ("One in no imminent danger from a minatory foe may not purposely confront him and then invoke self-defense for an immediate homicide."); Syl. pt. 7, in part, *State v. Snider*, 81 W.Va. 522, 94 S.E. 981 (1918) ("Mere words or threats unaccompa-

and crafted various procedural rules to govern the assertion of this affirmative defense.[9]

nied by an overt act do not constitute ground of justification or excuse of a homicide, under the law of self-defense[.]"); Syl. pt. 1, *Smith v. Fahey*, 63 W.Va. 346, 60 S.E. 250 (1908) ("In an action for damages for injuries resulting from a beating, the doctrine of self-defense cannot be successfully invoked where defendant was the aggressor, where he used more force than was reasonably necessary for his protection, or where, after the assault had terminated and all danger past, he struck or beat the aggressor by way of revenge."); Syl. pt. 14, *State v. Greer*, 22 W.Va. 800 ("An instruction is correct, which informs the jury that the prisoner cannot shield himself under the plea of self-defence, if he had reason to believe and did believe, that the assaulting party only intended to commit a trespass, and did not intend to take life or inflict great bodily harm."); Syl. pt. 9, *State v. Abbott*, 8 W.Va. 741 ("Previous threats or acts of hostility, however relevant they may be, will not justify a person in seeking and slaying his adversary.").

9. *See, e.g.,* Syl. pt. 3, *Dietz v. Legursky*, 188 W.Va. 526, 425 S.E.2d 202 (1992) ("In a homicide case, malicious wounding, or assault where the defendant relies on self-defense or provocation, under Rule 404(a)(2) and Rule 405(a) of the *West Virginia Rules of Evidence*, character evidence in the form of opinion testimony may be admitted to show that the victim was the aggressor if the probative value of such evidence is not outweighed by the concerns set forth in the balancing test of Rule 403."); Syl. pt. 3, *State v. Woodson*, 181 W.Va. 325, 382 S.E.2d 519 (1989) ("Under 405(b) of the West Virginia Rules of Evidence, a defendant in a criminal case who relies on self-defense or provocation may introduce specific acts of violence or threats made against him by the victim, and if the defendant has knowledge of specific acts of violence against third parties by the victim, the defendant may offer such evidence."); Syl. pt. 6, *State v. McKinney*, 178 W.Va. 200, 358 S.E.2d 596 (1987) ("Once the defendant meets his initial burden of producing some evidence of self-defense, the State is required to disprove the defense of self-defense beyond a reasonable doubt."); Syl. pt. 4, *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 ("Once there is sufficient evidence to create a reasonable doubt that the killing resulted from the defendant acting in self-defense, the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense."); Syl. pt. 1, *State v. Collins*, 154 W.Va. 771, 180 S.E.2d 54 (1971) ("When in a prosecution for murder the defendant relies upon self-defense to excuse the homicide and the evidence does not show or tend to show that the defendant was acting in self-defense when he shot and killed the deceased, the defendant will not be permitted to prove that the deceased was of dangerous, violent and quarrelsome character or reputation."); *State v. Perkins*, 130 W.Va. 708, 712, 45 S.E.2d 17, 19 (1947) ("Mere words, unaccompanied by an overt act, are not sufficient to justify an instruction to the jury on the theory of self-defense." (citation omitted)); Syl. pt. 2, *State v. Ponce*, 124 W.Va. 126, 19 S.E.2d 221 (1942) ("It is prejudicial error for a trial court to refuse to give instructions which correctly enunciate the law of self-defense, where such instructions are warranted under the evidence adduced."); Syl. pt. 2, *State v. Stanley*, 112 W.Va. 310, 164 S.E. 254 (1932) ("In a prosecution for murder where there is substantial evidence to establish a plea of self-defense, it is competent for defendant to prove prior attacks made upon him by the deceased."); Syl. pt. 6, *State v. Hamrick*, 112 W.Va. 157, 163 S.E. 868 (1932) ("It is peculiarly within the province of the jury to weigh the evidence upon the question of self defense, and the verdict of a jury adverse to that defense will not be set aside unless it is manifestly against the weight of the evidence."); Syl. pt. 6, *State v. McMillion*, 104 W.Va. 1, 138 S.E. 732 (1927) ("Under his plea of self-defense, the burden of showing the imminency of the danger rests upon the defendant. No apprehension of danger previously entertained will justify the commission of the homicide; it must be an apprehension existing at the time the defendant fired the fatal shot."); Syl. pt. 3, *State v. Siers*, 103 W.Va. 30, 136 S.E. 503 (1927) ("An instruction on the right of self-defense is erroneous, which makes the accused the sole judge of the emergency.");

Syl. pts. 1 & 2, *State v. Laura*, 93 W.Va. 250, 116 S.E. 251 (1923) (Syl. pt. 1: "In the trial of one accused of homicide, when self defense is relied on, the prior bad conduct of the deceased so closely connected in time and place as to show the state of mind and characterize the conduct of the deceased towards the defendant or his wife, home or place of business, is admissible in evidence for that purpose."; Syl. pt. 2: "And the evidence of previous threats of the deceased against the accused and his property communicated to him and calculated to shed light upon the mental attitude of the deceased towards the prisoner, are admissible in evidence for that purpose.");

Syl. pts. 1 & 3, *State v. Arrington*, 88 W.Va. 152, 106 S.E. 445 (1921) (Syl. pt. 1: "In a trial for homicide, where one of the issues is self defense, it is competent for the accused to testify concerning his belief and feelings as to the conduct of the deceased at the time of the killing, and to state the motive or purpose which prompted him to fire the fatal shot."; Syl. pt. 3: "Where self defense is an issue in a trial for homicide, evidence that the deceased was unarmed at the time of the killing is admissible."); Syl. pt. 9, *State v. McCausland*, 82 W.Va. 525, 96 S.E. 938 (1918) ("Where one charged with murder admits the killing and attempts to justify his act upon the ground of self defense, it is proper for him to prove that the deceased was a violent and dangerous man, not only at or about the time of the killing, but that he had been such continuously for many years prior thereto."); Syl. pts. 1 & 2,

In fact, the right to self-defense is so entrenched in the common law of this State that, some eighty years ago, this Court, while considering a defendant's plea of self-defense, obviated the need for meaningful discussion thereof by remarking that "[t]he law of self-defense is so well understood and has been so many times laid down by prior decisions as to need no additional affirmation in this case." *State v. Miller*, 85 W.Va. 326, 329, 102 S.E. 303, 304 (1919). *See also State v. Cook*, 204 W.Va. 591, 598, 515 S.E.2d 127, 134 (1999) ("Our cases have succinctly articulated the development and scope of the doctrine of self-defense and the use of deadly force under it."). Furthermore, we previously have recognized that the right to self-defense extends to one's place of employment:

> [i]n defending himself, his family or his property from the assault of an intruder, one is not limited to his immediate home or castle; his right to stand his ground in defense thereof without retreating extends to his place of business also and where it is necessary he may take the life of his assailant or intruder.

Syl. pt. 7, *State v. Laura*, 93 W.Va. 250, 116 S.E. 251 (1923). Hence, it goes without saying that an individual's right to self-defense in West Virginia has been sufficiently established in and clarified by our State's common law so as to render it a substantial public policy.

 While we recognize this substantial public policy of an employee's right to defend him/herself against bodily injury, we nevertheless must also be mindful of an employer's corresponding duty to safeguard its employees and patrons. *See generally* 12B Michie's Jurisprudence *Master and Servant* §§ 13–15 (Repl.Vol.1992). Thus, while a particular employee may assert his/her right to self-defense, an employer also has an interest in protecting its staff and customers from harm that may befall them as a result of the employee's actions in defending him/herself. For example, in the case *sub judice*, it is quite possible that someone, be it Feliciano, his coworker, or an innocent bystander, could have been injured in the course of Feliciano's attempts to defend himself. While it is indeed quite fortunate that no such injuries resulted, we must still account for this very real possibility. Accordingly, we find that while an employee has a right to self-defense, such right must necessarily be limited in its scope and available in only the most dangerous of circumstances. Therefore, we hold that when an at will employee has been

*Pendleton v. Norfolk & Western Ry. Co.*, 82 W.Va. 270, 95 S.E. 941 (1918) (Syl. pt. 1: "In a civil action to recover damages for an assault and battery, the defendant cannot justify upon the ground of self-defense, unless such matter of justification be specially pleaded."; Syl. pt. 2: "In such case, however, evidence tending to show that the assault was committed by the defendant in self-defense may be introduced under the plea of not guilty, in mitigation of damages, but not in justification of the assault."); Syl. pt. 4, *Teel v. Coal & Coke Ry. Co.*, 66 W.Va. 315, 66 S.E. 470 (1909) ("The law of self-defense does not vary in the application thereof to felony, misdemeanor and civil cases."); Syl. *State v. Roberts*, 64 W.Va. 498, 63 S.E. 282 (1908) ("When, upon a conviction for malicious shooting, the only question is whether the accused acted in self-defence, and the evidence as to it is materially conflicting, the supreme court will not grant a new trial."); Syl. pts. 1, 2, & 5, *State v. Dillard*, 59 W.Va. 197, 53 S.E. 117 (1906) (Syl. pt. 1: "Upon a trial for murder, where the killing is admitted, and the defendant relies upon self-defense, the burden is upon him to establish such defense to the satisfaction of the jury."; Syl. pt. 2: "Where, upon a trial for murder, the evidence introduced by the state to establish the homicide, tends to show extenuating circumstances, this does not relieve the defendant of the burden of establishing self-defense, if it is relied o@n, to the satisfaction of the jury; but the circumstances so shown are proper to be considered by the jury in arriving at their verdict."; Syl. pt. 5: "It is peculiarly within the province of the jury to weigh the evidence upon the question of self defense, and the verdict of a jury adverse to that defense will not be set aside unless it is manifestly against the weight of the evidence."); Syl. pt. 1, *State v. Newman*, 49 W.Va. 724, 39 S.E. 655 (1901) ("A question of self-defense is peculiarly a jury question, and an appellate court will not set aside a verdict against that defense except in rare cases, where it is very manifestly and plainly against the evidence."); Syl. pt. 4, *State v. Dickey*, 48 W.Va. 325, 37 S.E. 695 (1900) ("Whether a homicide is voluntary manslaughter or homicide in self-defense is a question of fact for the jury upon the evidence."); Syl. pt. 19, *State v. Greer*, 22 W.Va. 800 ("Upon a trial for murder the use of a deadly weapon being proved, and the prisoner relying on self-defence to excuse him for the use of the weapon, the burden of showing such excuse is on the prisoner, and to avail him, such defence must be proven by a preponderance of the evidence.").

discharged from his/her employment based upon his/her exercise of self-defense in response to lethal imminent danger, such right of self-defense constitutes a substantial public policy exception to the at will employment doctrine and will sustain a cause of action for wrongful discharge.[10] Consistent with our prior precedent,[11] we hold further that an employer may rebut an employee's *prima facie* case of wrongful discharge resulting from the employee's use of self-defense in response to lethal imminent danger by demonstrating that it had a plausible and legitimate business reason to justify the discharge.

■■■ As this case is presently before the Court upon certification of a question of law, we are not at liberty to decide whether the facts support Feliciano's cause of action for wrongful discharge. However, as guidance for future cases, we find the following elements of the tort of wrongful discharge, as enumerated by the United States Court of Appeals for the Sixth Circuit in *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365 (6th Cir.1999), to be particularly instructive to a determination of whether an employee has successfully presented a claim of relief for wrongful discharge in contravention of substantial public policy:

1. [Whether a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

2. [Whether] dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

3. [Whether t]he plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

4. [Whether t]he employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

173 F.3d at 375 (quoting *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 151, 677 N.E.2d 308, 321 (1997) (internal quotations and citations omitted)). This succinct summation merely reiterates the procedures we previously have delineated in the foregoing discussion and decision of this case.

## IV.

## CONCLUSION

In conclusion, we answer the question certified by the United States District Court for the Northern District of West Virginia in the affirmative, but with limitation. Thus, the

---

10. Other jurisdictions considering this issue have reached varying outcomes. Some states have found, as we have, the right to self-defense constitutes a substantial public policy. *See, e.g., Babick v. Oregon Arena Corp.*, 160 Or.App. 140, 980 P.2d 1147, *review allowed*, 329 Or. 357, 994 P.2d 123 (1999) (unpublished table decision) (finding claim of imminent danger renders wrongful discharge claim justiciable); *Ellis v. City of Seattle*, 142 Wash.2d 450, 13 P.3d 1065 (2000) (en banc) (upholding employee's claim of wrongful discharge against employer who fired him after he refused to disable fire alarm system that interfered with quality of arena's sound system); *Gardner v. Loomis Armored Inc.*, 128 Wash.2d 931, 913 P.2d 377 (1996) (en banc) (answering, in the affirmative, certified question inquiring "whether an employer contravenes public policy when it terminates an at-will employee who violated a company rule in order to go to the assistance of a citizen who was in danger of serious physical injury or death?"). However, other courts have declined to adopt this position. *See, e.g., Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md.App. 470, 665 A.2d 297 (1995) (following *McLaughlin*, below, and declining to recognize substantial public policy of self-de-

fense); *McLaughlin v. Barclays American Corp.*, 95 N.C.App. 301, 382 S.E.2d 836 (1989) (concluding, where supervising employee exercising self-defense against subordinate employee was discharged, that public policy argument was not convincing); *Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 545 A.2d 334 (1988) (rejecting discharged employee's characterization of self-defense as public policy in favor of employer's legitimate interest in discharging disruptive employees).

11. *See, e.g.*, Syl. pt. 8, *Page v. Columbia Natural Res., Inc.*, 198 W.Va. 378, 480 S.E.2d 817 (1996) ("Once the plaintiff in an action for wrongful discharge based upon the contravention of a substantial public policy has established the existence of such policy and established by a preponderance of the evidence that an employment discharge was motivated by an unlawful factor contravening that policy, liability will then be imposed on a defendant unless the defendant proves by a preponderance of the evidence that the same result would have occurred even in the absence of the unlawful motive."). *Accord* Syl. pt. 2, *Powell v. Wyoming Cablevision, Inc.*, 184 W.Va. 700, 403 S.E.2d 717 (1991).

right of self-defense in response to lethal imminent danger is a substantial public policy exception to the at will employment doctrine and will support a cause of action for wrongful discharge. An aggrieved employer may then rebut the presumption of a wrongful discharge by demonstrating that it had a plausible and legitimate business reason for terminating its employee.

Certified Question Answered.

Justice MAYNARD dissents and files a dissenting opinion.

MAYNARD, Justice, dissenting.

(Filed Dec. 11, 2001)

I do not believe that the right of self-defense should constitute a substantial public policy exception to the employment at will doctrine so as to sustain a cause of action for wrongful discharge.

The basic rule that an employer has an absolute right to discharge an at-will employee has been subjected to several exceptions by this Court, one of which is that where an employer's motivation for the discharge is to contravene a substantial public policy, then the employer may be liable to the employee for damages. A review of these exceptions indicates that generally they were created to protect the public from threats to its health, financial well-being, or constitutional rights, or to guarantee the effective operation of the legal system. The rationale underlying each exception is that protecting the employee from discharge is necessary to uphold a substantial public interest. I fear that the new exception to the employment at will doctrine will have the opposite effect and actually result in an increased risk of harm to the public.

The 7–Eleven Corporation prohibits employees from subduing or otherwise interfering with a store robbery out of recognition of the fact that employees who interfere with robbers are not only much more likely to suffer injuries to themselves but also to cause harm to innocent bystanders such as customers. By discouraging store policies like the one at issue here, I believe that the majority unintentionally encourages irresponsible and even dangerous conduct among employees which will result in increased numbers of injuries.

This in turn will cause more lawsuits against 7–Eleven by both employees and customers who are injured when employee attempts to stop robberies erupt into violence. In *Blake v. John Skidmore Truck Stop, Inc.,* 201 W.Va. 126, 493 S.E.2d 887 (1997), to which I dissented, this Court ruled that an employee of a truck stop who sustained injuries at work as the result of criminal acts of a third party could bring a deliberate intention cause of action against her employer. As evidence of deliberate intention, the Court pointed to the testimony of plaintiff's expert who opined that the store where the plaintiff worked constituted a specific unsafe working condition *because it did not have adequate security safeguards.* In the case at hand, the majority opinion actually renders unenforceable one of 7–Eleven's safeguards to protect workers in case of robbery. Nevertheless, the absence of this policy would probably cause this Court to uphold a deliberate intention action against 7–Eleven arising from an injury to an employee caused when he or she attempted to subdue a robber.

Moreover, the new substantial public policy exception to the employment at will doctrine renders no-fighting policies unenforceable as well. Now every time an employee is discharged for fighting, he or she will sue his or her employer and claim self-defense. The majority opinion will have the unfortunate result of taking disciplinary decisions out of the hands of private employers and placing these decisions in the courts.

Finally, the majority's new exception to the employment at will doctrine simply is not necessary. It cannot honestly be believed that in those rare instances when an employee is faced with the imminent threat of serious physical harm or death, that he or she would forego defending himself or herself for fear of losing a job as a result.

It is clear to me that recognizing self-defense as a substantial public policy excep-

tion to the employment at will doctrine is not only unnecessary but will do more harm than good. It is likely to increase the chance of physical altercations between employees and robbers, which, in turn, will result in injuries to employees and customers, and more law-suits against 7–Eleven and similar businesses. For these reasons, I dissent.