# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Angela Bailey,**
**Plaintiff Below, Petitioner**

**FILED**

June 24, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 12-1017** (Randolph County 11-C-158)

**Wexford Health Sources, Inc. and Tristan Tenney,**
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner Angela Bailey, by counsel Mark Goldner, appeals the Circuit Court of Randolph County's order entered on August 23, 2012, granting summary judgment in favor of respondents. Respondents appear by counsel Charles L. Woody and Matthew P. Heiskell.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was employed by Respondent Wexford Health Sources, Inc. (Wexford)[1] as a medical assistant. She was an at-will employee. Petitioner worked in the medical facility of the West Virginia Division of Corrections (DOC) at the Huttonsville Correctional Facility (Huttonsville). Among other things, petitioner drew blood from inmates incarcerated in the prison, gave injections, and took vital signs and measurements. Petitioner complained to her supervisor, Respondent Tristan Tenney, about the lack of medical supplies, including bandages, in the medical facility. She threatened to contact the United States Occupational Health and Safety Administration about the lack of adequate medical supplies.

On August 5, 2009, after drawing blood from an inmate in the lab, petitioner accidently splashed the inmate's blood on her clothing and keys. She believed the spilled blood was contaminated with Hepatitis C, and panicked. Correctional Officer Wamsley was in the lab with petitioner when the blood spill occurred. He called an inmate working as a janitor in the medical facility, Inmate Honaker, into the lab to assist in cleaning the spilled blood. Petitioner unhooked her prison keys from her security belt and handed her keys to Inmate Honaker so that he could clean them in the sink. Corrections Officer Wamsley was present in the lab room at all times

---

[1]Wexford is under contract with the West Virginia Division of Corrections to provide various health care services to prisons throughout the State.

1

when the blood was spilled and when Inmate Honaker assisted petitioner in cleaning the blood spill.

On August 7, 2009, respondents terminated petitioner's employment for giving her keys to an inmate in violation of the key control policies of the DOC and Wexford.

Petitioner filed a complaint in May of 2010, asserting claims for retaliatory discharge (Count I), age discrimination (Count II), and intentional infliction of emotional distress (Count III).[2] Petitioner asserted that she was discharged because she complained about not having "enough medical supplies to properly carry out care and treatment of inmates." She referred to the supplies as Band-Aids and gauze. Petitioner maintained respondents' actions were a violation of public policy but she did not identify any specific public policy in the complaint. Answering respondents' discovery, petitioner responded that the public policy was found in West Virginia Code § 21-1-1a, which provides that "[t]he primary purpose of the [DOC] is to enhance public safety by providing for the incarceration and care of convicted offenders who have been sentenced by courts of proper jurisdiction to serve terms of incarceration." Petitioner identified no other public policy in discovery.

In July of 2012, respondents filed a motion for summary judgment. In petitioner's memorandum in opposition to respondents' motion for summary judgment, and at oral argument, petitioner stated that there was a public policy for an employer to maintain a safe working environment, and cited the Occupational Safety and Health Act (OSHA), 29 U.S.C. § 651, *et seq.*, as public policy. After hearing oral argument of the parties, the circuit court granted respondents' motion for summary judgment.[3] Specifically, the circuit court found that petitioner "has not cited a substantial public policy which provides her with a cause of action under this [c]omplaint." The circuit court found that petitioner's reliance on OSHA law was misplaced because it had no relationship to the allegation in the complaint about alleged insufficient medical supplies for the care and treatment of inmates.[4] The circuit court also found that respondents had "an overriding business justification" for the discharge by virtue of petitioner's violation of company policy.

On appeal to this Court, petitioner contends that the circuit court erred in granting respondents' motion for summary judgment. She argues that genuine issues of material fact remain which entitle her to a trial on the merits.

---

[2]Petitioner filed the complaint in the Circuit Court of Kanawha County. By order dated September 28, 2011, the case was transferred to the Circuit Court of Randolph County.

[3]Petitioner consented to the dismissal of Counts II and III during oral argument on respondents' summary judgment motion.

[4]This Court agrees with the circuit court's finding that OSHA was "not designed for the purpose of protecting inmates, and the well-being of inmates is wholly unrelated to workplace safety for employees." Accordingly, we find no merit in petitioner's argument that she may base her claim for retaliatory discharge on the public policy of an employee's right to a safe workplace environment.

This Court reviews a circuit court's entry of summary judgment de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). "'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syl. Pt. 1, *Carr v. Michael Motors, Inc.*, 210 W.Va. 240, 557 S.E.2d 294 (2001). We note that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. Pt. 3, *Painter, Id.* Mindful of these principles, we address the issue raised on appeal.

Petitioner asserts the circuit court erred by granting summary judgment in favor of respondents because the court erroneously determined that there was no substantial West Virginia public policy on which she may base her claim of retaliatory discharge. She argues that there is a substantial West Virginia public policy establishing inmates' right to adequate medical care. She continues to rely on West Virginia Code § 25-1-1a[5] as the substantial public policy to support her claim. Petitioner now asserts, for the first time, that the DOC's Policy Directive No. 4101.02,[6] which establishes standards for inmates' medical care, is substantial public policy of West Virginia.

We begin by recognizing that in the State of West Virginia, employers and employees alike are generally governed by the at-will employment doctrine. Pursuant to this principle, "[w]hen a contract of employment is of indefinite duration it may be terminated at any time by either party to the contract." Syl. Pt. 2, *Wright v. Standard Ultramarine & Color Co.,* 141 W.Va. 368, 90 S.E.2d 459 (1955). This Court has held that "an at-will employee serves at the will and pleasure of his or her employer and can be discharged at any time, with or without cause." *Kanagy v. Fiesta Salons, Inc.,* 208 W.Va. 526, 529, 541 S.E.2d 616, 619 (2000) (citation omitted).

---

[5]West Virginia Code 25-1-1a, states, in part,

> The primary purpose of the Division of Corrections is to enhance public safety by providing for the incarceration and care of convicted offenders who have been sentenced by courts of proper jurisdiction to serve terms of incarceration. It is the intent of the Legislature:
> . . .
> (3) to establish a just, humane and efficient corrections program; and
> . . .
> (b) This section shall be construed in favor of public safety.

[6]Policy Directive 410.02 provides, in part,

> It is the policy of the [DOC] to maintain a mechanism that ensures correctional institutions/facilities/centers provide health care services . . . in order to protect the health and wellbeing of their inmate populations.

An exception to the at-will employment doctrine recognizes that, in spite of the right of employers to terminate their employees, "[o]ne of the fundamental rights of an employee is the right not to be the victim of a 'retaliatory discharge,' that is, a discharge from employment where the employer's motivation for the discharge is in contravention of a substantial public policy[.]" *Kanagy,* 208 W.Va. at 530, 541 S.E.2d at 620 (quoting *McClung v. Marion County Comm'n,* 178 W.Va. 444, 450, 360 S.E.2d 221, 227 (1987)). *See* Syl. Pt. 2, *Birthisel v. Tri-Cities Health Servs. Corp.,* 188 W.Va. 371, 424 S.E.2d 606 (1992) ("To identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, we look to establish precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions.").

In order to sustain a cause of action for retaliatory discharge, the public policy relied upon must not just exist; it must be substantial. Moreover,

> [t]he term "substantial public policy" implies that the policy principle will be clearly recognized simply because it is substantial. An employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations.

*Feliciano v. 7-Eleven, Inc.*, 210 W.Va. 740, 745, 559 S.E.2d 713, 718 (2001) (quoting *Birthisel*, 188 W.Va. at 377, 424 S.E.2d at 612). Therefore, to be substantial, a public policy must not just be recognizable as such but must be so widely regarded as to be apparent to employers and employees alike. We note that the "determination of the existence of public policy in West Virginia is a question of law, rather than a question of fact for a jury." *Kanagy,* 208 W.Va. at 529, 541 S.E.2d at 619.

Turning now to the issue presently before the Court, we must decide whether an inmate's right to adequate medical supplies, such as bandages, is a substantial public policy exception to support a cause of action for retaliatory discharge. This Court finds no substantial public policy in West Virginia law lending support to petitioner's claim. While West Virginia Code § 25-1-1a does refer to a "just, humane and efficient corrections program," these words are too general to provide any specific guidance. Furthermore, this statute explicitly provides that the primary purpose of the DOC is to "enhance public safety" by incarcerating convicted offenders. Similarly, Policy Directive 410.02 does not provide a substantial public policy related to petitioner's complaint about adequate medical supplies. The provision does refer to "appropriate services and supplies . . . to promote the maintenance of acceptable levels of offender hygiene." Likewise, this phrase is too general to provide any specific guidance. Furthermore, petitioner concedes that she did not present Policy Directive 410.02 to the circuit court, and the circuit court did not consider it. This Court declines to pass on a non-jurisdictional question which has not been decided by the circuit court in the first instance. Syl. Pt. 10, *Vandevender v. Sheetz, Inc.*, 200 W.Va. 591, 490 S.E.2d 678 (1997).

For the foregoing reasons, we affirm the circuit court's order granting summary judgment in favor of respondents. Petitioner has failed to cite a substantial public policy of West Virginia which provides her with a cause of action under the complaint. Therefore, as an at-will

4

employee, she could be discharged with or without cause.[7] *Kanagy,* 208 W.Va. at 529, 541 S.E.2d at 619 (2000).

Affirmed.

**ISSUED:**  June 24, 2013

**CONCURRED IN BY:**

Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Brent D. Benjamin

---

[7]We therefore find no merit in petitioner's contention that the circuit court committed error by holding that respondents had an overriding business justification for terminating her employment for violation of company policy.