15-0695 - *Herbert J. Thomas Memorial Hospital v. Nutter*

**FILED**
**November 17, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Loughry, J., concurring, in part, and dissenting, in part:

I concur in the majority's conclusion that the respondent's defamation claim must be reversed due to the governing one-year statute of limitations and that the Wage Payment Act claim must be remanded for a new trial because of the trial court's prejudicial conduct during trial. I likewise concur that both the respondent's *Harless*[1] and intentional infliction of emotional distress claims must be reversed, but firmly disagree with the analysis employed by the majority regarding those claims. With its conclusion that these claims fail based on insufficiency of the evidence, the majority improperly invaded the fact-finding function of the jury. The respondent's *Harless* claim fails on a more fundamental basis and, therefore, should never have reached the jury. Because the respondent failed to articulate a substantial public policy that her discharge contravened, the *Harless* claim must fail. Moreover, because the evidence in support of the respondent's intentional infliction of emotional distress claim was duplicative of her retaliatory discharge evidence, she failed to articulate a separately recoverable claim. Accordingly, I respectfully concur, in part, and dissent, in part.

---

[1]*Harless v. First Nat. Bank in Fairmont*, 162 W.Va. 116, 116, 246 S.E.2d 270, 271 (1978).

1

In *Harless*, this court held that the at-will employment doctrine was subject to exception where a discharge was effected in contravention of a substantial public policy:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

Syllabus, *Harless*, 162 W.Va. 116, 246 S.E.2d 270. In syllabus point two of *Birthisel v. Tri-Cities Health Servs. Corp.*, 188 W.Va. 371, 372, 424 S.E.2d 606, 607 (1992), we held that sources of substantial public policy sufficient to support a *Harless* claim may be found among "established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." However, such substantial public policy is not found in policies which are "too general to provide any specific guidance or is so vague that it is subject to different interpretations." *Birthisel*, 188 W.Va. at 377, 424 S.E.2d at 612. Critically "a *Harless*-based action requires more than simply raising the [spectre] of a potentially governing law." *Frohnapfel v. ArcelorMittal USA LLC*, 235 W.Va. 165, 170, 772 S.E.2d 350, 355 (2015).

In the instant case, the trial court instructed the jury on a handful of federal regulations which it summarily deemed "public policy."[2] The majority states that it

_____

[2]The trial court instructed the jury as follows:

"presume[s] that the circuit court correctly stated public policies[.]" Had the majority

properly addressed this threshold issue, it would never have had to reach the evidentiary issue

upon which it based its decision. Because I expressly disavow the notion of this Court

1.      Standard 42 CFR 482.23 (b): Public policy requires that there be adequate personnel available in each unit of a hospital to ensure that there is the immediate availability of a registered nurse for bedside care of any patient when needed.

2.      Standard 42 CFR 482.24(c)(1): All orders must be authenticated based upon Federal and State law. All orders, including verbal orders, must be dated, timed and authenticated promptly by the ordering practitioner or another practitioner who is responsible for the care of the patient and authorized to write orders in accordance with State law.

3.      Standard 42 CFR 482.43(a): The hospital must identify at an early stage of hospitalization all patients who are likely to suffer adverse health consequences upon discharge if there is no adequate discharge planning.

4.      Standard 42 CFR 482.43 (d): The hospital must transfer or refer patients, along with the necessary medical information, to appropriate facilities, agencies or outpatients services, as needed, for follow-up or ancillary care.

5.      Standard 42 CFR 482.24(c)(2)(vii): All records must document the following as appropriate: Discharge Summary with outcome of hospitalization, disposition of care and provisions for follow up care.

6.      Standard 42 CFR 482.21 (e) (2): Public policy requires that the hospital governing body, medical staff, and administrative officials are responsible and accountable for ensuring that the hospital-wide quality assessment and performance improvement efforts address priorities for improved quality of care and that improvement actions are evaluated.

substituting its assessment of the evidence presented, I am compelled to dissent to the majority's analysis of this issue.[3]

---

[3]I would be remiss if I did not likewise express my disagreement with the majority's misapprehension of the elements of proof required under *Harless*. *Harless* forbids a discharge which is in contravention of a substantial public policy. Nowhere in our jurisprudence is it required that the employer have committed the underlying acts that actually violated a substantial public policy. Simply put, if an employee complains about perceived violations of a substantial public policy and the employer discharges the employee for those complaints (i.e. in contravention of the substantial public policy), is it a requirement that the employee have actually been correct about whether the public policy was being violated by the employer? *Cf.* W.Va. Code § 6C-1-2 and 3 (2015) (prohibiting discrimination or retaliation of employee due to "good faith report" of wrongdoing; "good faith" report defined as report which employees need only have "reasonable cause to believe is true").

The majority seemingly concludes that the employee must prove that he or she was correct in their complaints. Our jurisprudence suggests otherwise and makes the focus of the claim on the *discharge* itself. *Harless* requires only that the *discharge* be "in contravention of" a public policy. Moreover, the four-factor test articulated in *Feliciano v. 7-Eleven, Inc.*, 210 W.Va. 740, 559 S.E.2d 713 (2001), states that an employee must prove that his or her dismissal "*jeopardize*[*s*]" the public policy at issue. *Id*. at 750, 559 S.E.2d at 723. (emphasis added). In spite of this, the majority bases its reversal of the *Harless* claim on the fact that the respondent "did not introduce any evidence showing Medicare fraud actually occurred" and "there was no evidence to say that the manner in which the hospital discharged patients violated Medicare guidelines." The majority conflates the distinct issues of whether the respondent's *discharge* was in contravention of public policy with the (potentially immaterial) issue of whether the underlying public policy itself was violated by the employer by making such statements as "[w]e are simply unable to find any evidence from which a jury could conclude that Thomas Memorial contravened some substantial public policy principle."

While I do not purport to pass on the issue of whether an employee must prove that complained-of actions on the part of the employer actually violated a substantial public policy, it is at a minimum clear that such an issue has not been previously addressed by this Court, nor does the majority address and directly resolve this concern. That "failure" suggests the majority's lack of appreciation for these critical distinctions.

4

Upon closer analysis, one discovers that the source of these "public policy" regulations is the Center for Medicare and Medicaid Services' ("CMS") "Conditions of Participation for Hospitals." 42 Code of Federal Regulations § 482.1 specifically states that "[t]he provisions of this part serve as the basis of survey activities *for the purpose of determining whether a hospital qualifies for a provider agreement under Medicare and Medicaid.*" *Id.* (emphasis added). These regulations are conditions of participation in and reimbursement by Medicare and Medicaid. *See Neiberger v. Hawkins*, 208 F.R.D. 301, 310 (D. Colo. 2002) (finding that CMS regulations do not provide right of action or establish standard of care, but merely determine whether hospital qualifies for provider agreement).

With that understanding, the inescapable conclusion is that these regulations do not meet our test for a *Harless*-based discharge. First, these regulations are not statements of the public policy of the State of West Virginia. Although they may be laudable in an aspirational sense and clearly constitute a best practice, apparently the respondent provided no such corollary requirements embraced and articulated by the State of West Virginia as a public policy. The substantial public policies with which this Court and our citizenry are concerned are those expressed and adopted by our elected officials, who representatively reflect the electorate. One need go no further than the nightly news to identify both federal and state regulations and/or policies that do not necessarily reflect the values and policy considerations of the citizens of West Virginia. Thus, to blindly accept all existing

5

regulations, federal and state, as statements of this state's public policy would impermissibly allow someone to bring suit who was fired in contravention of a policy to which our citizenry does not subscribe, or has expressly rejected. In my view, that is not the intended result of *Harless*.

Moreover, the primary regulation which the respondent urged–inadequate staffing–is relatively vague. 42 C.F.R. § 482.23(b) provides:

> The nursing service must have *adequate* numbers of licensed registered nurses, licensed practical (vocational) nurses, and other personnel to provide nursing care to all patients as needed. There must be supervisory and staff personnel for each department or nursing unit to ensure, when needed, the immediate *availability* of a registered nurse for bedside care of any patient.

*Id*. (emphasis added). "Adequacy" and "availability" are fairly fluid concepts. What may be adequate on one day, with a certain patient load, may be inadequate on another day or even in an instant given the circumstances and expediencies of patient care. There is no concrete number or ratio provided in this policy and therefore is inherently subject to interpretation and constant adjustment to comply. This policy's shortcomings are a near-perfect description of the type of policy which this Court previously identified as "too general

6

to provide any specific guidance or is so vague that it is subject to different interpretations" to constitute a "substantial public policy." *Birthisel*, 188 W.Va. at 377, 424 S.E.2d at 612.[4]

To be clear, there is no question that adequate staffing is of critical importance in our health care facilities. In fact, had the respondent identified a specific requirement regarding staffing that provided an actual staffing-related standard, I would have little difficulty finding such to be a substantial public policy. As required by syllabus point three of *Birthisel*: "Inherent in the term 'substantial public policy' is the concept that the policy will provide *specific guidance* to a reasonable person." 188 W.Va. 371, 424 S.E.2d 606 (emphasis added).

Turning to the respondent's intentional infliction of emotional distress claim, I likewise agree that the jury award must be reversed. Unlike the majority, I find it unnecessary to wade into the factual morass to reach that conclusion because the respondent's claim again fails as a matter of law.

---

[4]The respondent argues that the Court's decision in *Tudor v. Charleston Area Medical Center, Inc.*, 203 W.Va. 111, 506 S.E.2d 554 (1997) is dispositive of this issue. In *Tudor*, this Court found a similarly-worded state regulation to create a substantial public policy. First, I note that the circuit court did not instruct the jury on any state regulations; rather, he cited a litany of federal regulations. Secondly, like the vague and subjective regulations cited herein, I believe that the state regulations at issue in *Tudor* were similarly too vague and non-specific to provide "specific guidance" of the level required to constitute a substantial public policy. *See Birthisel*, 188 W.Va. at 377, 424 S.E.2d at 612.

In *Dzinglski v. Weirton Steel Corp.*, 191 W.Va. 278, 285, 445 S.E.2d 219, 226 (1994), *holding modified by Tudor v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 111, 506 S.E.2d 554 (1997), this Court stated:

> [T]he prevailing rule in distinguishing a wrongful discharge claim from an outrage claim is this: when the employee's distress results from the fact of his discharge-e.g., the embarrassment and financial loss stemming from the plaintiff's firing-rather than from any improper conduct on the part of the employer in effecting the discharge, then no claim for intentional infliction of emotional distress can attach.

Although the holding in *Dzinglski* stating that emotional distress damages are essentially duplicative of punitive damages was modified by *Tudor*, that modification does not affect the premise that an employee's proof must still be distinct on each claim. For instance, in *Tudor*, the plaintiff alleged that her employer, upon being called for references, continued to falsely and unfairly disparage her. As stated in *Dzinglski*, to sustain a commensurate intentional infliction of emotional distress claim concurrent with a discharge claim, an employee must point to some conduct *other than* the purportedly wrongful discharge to sustain such a claim. A review of the respondent's evidence demonstrates that, although emotionally distraught by a discharge she perceived to be unfair and unfounded, the respondent presented no evidence of improper conduct on her employer's part in effecting the discharge. In sum, her emotional distress was occasioned by the discharge itself, which was the basis of her retaliation claim. Intentional infliction of emotional distress is not an end-run around the required proof for a retaliatory discharge claim. Accordingly, under

8

*Dzinglski*, the respondent's intentional infliction of emotional distress claim fails as a matter of law.

Finally, I write to emphasize my vehement rejection of the majority's intrusion into the jury's deliberations and its self-serving conclusion that the clearly conflicting evidence was simply insufficient to sustain the respondent's verdict. "'It is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony is conflicting.' Point 3, Syllabus, *Long v. City of Weirton, W. Va.*, (1975) [158 W.Va. 741,] 214 S.E.2d 832." Syl. Pt. 2, *Bourne v. Mooney,* 163 W.Va. 144, 254 S.E.2d 819 (1979). My conclusion that the *Harless* and intentional infliction of emotional distress claims must be remanded is based upon an error of law that cannot be cured under any view of the evidence presented.

Accordingly, I respectfully concur, in part, and dissent, in part.